# WHEELING.

1873.
June Term.

THE STATE VS. MILLER.

THE STATE OF WEST VIRGINIA, PLAINTIFF BELOW AND DEFENDANT IN ERROR, *against* GUY MILLER, DE-FENDANT BELOW AND PLAINTIFF IN ERROR.

Decided June 26th, 1873.

## SYLLABUS.

After January 1873, when the Boards of Supervisors and Recorders had ceased to exist under the Constitution, though jurors could not be obtained under sections 3, 4, 5, 6, 7, 8, 9, 10, 12, 16 of Chapter 116 of the Code, to try cases of felony; in such cases they could be summoned and selected under section 3 of Chapter 159.

Section 21 of Chapter 116 of the Code relative to special juries, amended in 1870, does not apply in cases of felony.

When on the 1st of March 1873, a prisoner charged with murder was sit to the bar and announced that he was ready for trial, whereupon the court expressed the opinion that the prisoner might be legally tried by a special jury, and informed him that unless he

1873. .
June Term.

asked to be tried by such a jury the case would be continued; and thereupon the prisoner, stating that he did not wish to waive his right, but in order to get a trial, asked for a special jury. It is considered that what the court said and did was erroneous, and influenced the prisoner to ask for a special jury—and so to waive his right to strike eight jurors from the panel and acquiesce in the wrong of the prosecuting attorney's striking off two without cause; and that the accused is not precluded to question the legality of the proceeding, as if he had not asked the special jury but at the proper time had objected, or had moved to strike eight from the panel, or had objected to the prosecutor's striking off any.

*Brannon*, for Plaintiff in Errôr.

*Attorney General*, for the State.

HOFFMAN, Judge.

The Code—Chapter 116, Sections 3, 4, 5, 6, 7, 8, 9, 10, 12, 16—contains in substance these provisions :

The Board of Supervisors of each County, at their stated meetings in January, shall prepare a list of such inhabitants as they shall think well qualified to serve as jurors, persons of sound judgment and free from legal exception, which shall include at least twenty persons for every thousand inhabitants in the County. The list shall be delivered to the Clerk of the Circuit Court to be safely kept. When the list is made, the Board shall cause all the names to be written, each on a separate ballot, and shall deposite the ballots in a box, which shall be delivered to, and kept by the Clerk of the Circuit Court. All jurors required for the trial of cases in the Court, including cases of felony, shall be selected by drawing ballots from this box. The Clerk of the Court shall before each term, issue a writ of *venire facias* for thirty jurors, unless the court shall order a different number, and he shall issue a summons requiring the recorder to attend for the purpose of drawing the jurors. And the latter shall in the presence of the Clerk cause the proper number of jurors to be drawn from the box, and a list of those drawn to be delivered to the officer serving the summons, or if the recorder fail, the Clerk shall do so; and the of-

74

ficer shall summon each person who is drawn, to attend the court.

Chapter 159 contains these sections:

"3. In a case of felony, twenty jurors shall be drawn from the list of those in attendance, for the trial of the accused. If a sufficient number of jurors for such panel cannot be procured in this way, the court shall order others to be forthwith summoned and selected until a panel of twenty jurors, free from exception, be completed. The accused shall have no peremptory challenge, except that he may strike from the panel eight of the names thereon, and the jury shall be composed of those not so stricken off. If the accused fail to strike off eight, or a less number, of the names on the panel, the number not so stricken off by him shall be stricken off by the prosecuting attorney, so as to reduce the panel to twelve jurors.

"4. No challenge of a juror shall be allowed the state, except for cause, and all challenges shall be tried by the court in which they are made."

Does section 3 mean that when from any cause no jurors are selected, summoned and obtained according to the provissions of Chapter 116, already mentioned, the Court shall order others to be summoned and selected for a complete panel; or does it mean, merely, that when some jurors, but not enough, have been obtained under these provisions, the Court may cause the residue of the number to be summoned to complete the panel already made in part.?

The Act of the Gencrel Assembly of Virginia, concerning trials in criminal cases, passed in 1846—Chapter 85, section 1—provided that in prosecutions punishable by death or confinement in the penitentiary, the *venire facias* should command the officer charged with its execution, to summon twenty-four good and lawful men, freeholders of his bailiwick, over the age of twenty-one years, and possessed of a visible estate of the value of five hundred dollars, at the least, residing remote from

the place where the offence was charged to have been committed.

Section 3 of the same act, provided that, if any of the jurors summoned as before mentioned should fail to attend, or be challenged for cause, or if the whole array should be challenged, the court before which the trial was to be had, should cause "other jurors" to be summoned from the body of the County, until a panel of twenty-four qualified jurors, free from exception, should be completed.

In the criminal Code of Virginia, enacted in 1847, and the Code of 1849, this provision, slightly modified, but not at all changed so far as it affects the present inquiry, was inserted and re-enacted. Under each of these acts, as well when no jurors had been procured in the primary mode prescribed, as when a part of the number necessary had been procured in that manner, the court might cause jurors to be summoned and selected either to form an entire panel or to complete one partially made up. It is reasonable to suppose that when the same language was copied into the Code of this State, it was intended to mean the same thing.

Section 16 of Chapter 116 of the Code—provides; that the court, when not incompatable with the proper dispatch of business, shall have power to discharge persons summoned as jurors, or dispense with their attendance on any day of its sitting. Under this provision, the court acts for the convenience of the jurors, rather than with reference to any right of parties to suits or prosecutions. Such action of the court may, in part or in whole, deprive a party accused of felony, of any preference he might have to be tried by the jurors so discharged. Yet, though after the exercise of such power, no juror of this class should remain, section 3 of Chapter 159 would furnish the remedy to procure a full panel from which to select a jury.

And if the board of supervisors should fail to prepare a list, or the list should be lost, or the recorder and

clerk should fail to draw, or the sheriff should fail to summon jurors for any term of the court, or the jurors should fail to attend; nevertheless, under section 3, the court would order others summoned, to make the entire jury.

And when the convention and the people, by the new constitution, dispensed with the board of supervisors, but at the same time continued all laws not repugnant to the constitution ; and the representatives of the people in the Legislature left the pre-existing statutes in force, without the passage of any new act on the subject, till after the time fixed for one or more terms of the court in each circuit in the State, and when it did afterwards act, adopted the *venire facias,* or summons, as the only mode of obtaining a jury for the trial of a case of felony ; we cannot suppose that it was either the purpose or the effect of the constitutional action and legislative non-action, to render section 3 nugatory, and leave the state without any law whatever by which a party charged with felonious crime, could be tried and convicted or acquitted.

If but one juror could be procured under Chapter 116, the court might order others to be summoned under section 3 of Chapter 159, according to its most restricted interpretation. But the impossibility of procuring a single juror in one mode rather than another, when either is sanctioned by law, should not even temporarily effect the abolishment of trial for crime.

The provisions of Chapter 116, direct that the board of supervisors prepare a list and the recorder draw the jurors, while that of section 3 requires that the sheriff summon the jurors ; which, obtained in either way, must have the same qualifications. Possibly the former provisions might afford the party accused something more of security than the latter; but this gives him all that he had in Virginia and all that he had in this State before the enactment of the Code or has now under the

late act of the Legislature, and all that is necessary to an intelligent and impartial trial. It was important to the public that he should be tried; and much better for the accused that he should be tried by this law than that he should remain indefinitely in custody, awaiting the contingency that at some future time legislation on the subject might be enacted.

Section 21 of Chapter 116, re-enacted in 1870, Chapter 20, is this:

"21. Any court may allow a special jury in any case, to be formed in the following manner, viz: The court shall direct the sheriff to form a panel of twenty qualified jurors, whom he shall summon, and who are free from just cause of exception, from which sixteen shall be chosen by lot; the parties thereupon, beginning with the plaintiff's attorney, or the prosecuting attorney when the state is a party, shall alternately strike off one, until the number be reduced to twelve; which number shall compose the jury for the trial of the case."

Does this section apply to juries in cases of felony?

Some parts of Chapter 116 relate to juries in all classes of cases, civil and criminal; while other parts relate to those in civil cases and prosecutions for misdemeanors but not to those in prosecutions for felony. If that chapter, in all its parts, were intended to furnish the law applicable to juries in the latter class of cases, there would be no necessity for, or propriety in the adoption sections 3 and 4 of Chapter 159—most important provisions of which are fundamentally repugnant to those of the other chapter in question.

Section 6 provides that "all jurors required for the trial of cases in a circuit court, including cases of felony, shall be selected by drawing ballots from the box." If the general language of the chapter had related to juries in cases of felony, the words "including felonies," would have been unnecessary.

Section 17 provides that "in every case the plaintiff and defendant may each challenge two jurors perempto-

rily." Notwithstanding the comprehensiveness of this language, yet from principles generally recognized and the context of the legislation, it is clear beyond question, that this provision does not relate to cases of felony.

When section 21, in equivalent phrase, provides that "any court may allow a special jury in any case, and the parties, beginning with the plaintiff's attorney or prosecuting attorney, shall alternately strike off one till the number be reduced to twelve," there is no necessary application of either provision to cases of felony; while, on the other hand, there is the like strong reason as in the former, not to extend either or any provision of this section to that class of cases. Generally, if not universally, jurors have been and still are procured in the same manner, from the same classes of citizens, for the trial of civil suits and prosecutions for misdemeanors, but procured otherwise for the trial of prosecutions for felonies. And such was evidently the intention of the Legislatures that enacted the Code and amended section 21 of Chapter 116.

The same act that re-enacts section 21, also re-enacts section 23; and the latter contains a provision for the payment of jurors summoned by virtue of a *venire facias* or otherwise, and, among them, such as are sworn to serve in cases of felony.

Since the adoption of the constitution of Virginia of 1851, which provided that a section of a law, when amended, should be re-enacted and published at length; when sections have been so re-enacted, and numbered as they were in the original chapter before the re-enactment, the intention is generally manifest that the amended sections, and those of the chapter not amended, shall be construed with reference to each other, as if the sections as amended, were incorporated in the Chapter at the places indicated by the numbers. Accordingly section 23, though re-enacted immediately after section 21, relates to other sections of the chapter on the subject of jurors in both civil and criminal cases. It does not in-

dicate whether section 21 relates to cases of felony or not.

Section 3 of Chapter 159, concerning jurors in cases of felony, allows the accused peremptorily to strike from the panel eight names, and section 4 denies to the State any challenge, except for cause ; while Section 21 of Chapter 116, relative to special juries, permits the defendant to strike off but two, and the plaintiff or prosecuting attorney to strike off as many.

But little knowledge of human character and judicial proceedings is necessary to demonstrate the importance to a party accused of a capital or other felonious crime, that he should have the right within reasonable limits, to reject such of the jurors called for his trial, as he believes or fears may be prejudiced, or influenced against him. A case seldom occurs, in which the panel of jurors does not contain the names of some whom the party would not trust to do him justice, though he may not be able to prove a valid cause of challenge. And such are the passions and infirmities of mankind, that the apprehension is often too well founded.

For a period as long as we trace the history of the subject, the right of the party accused to liberal peremptory challenges in cases of felony, has been deemed indispensable to the humane administration of justice. At common law, the number of arbitrary challenges was thirty-five. By the English statute passed in the year 1531, the number was reduced to twenty. Under this statute and an act of the General Assembly of Virginia, passed in the year 1792, amended and re-enacted at the revisal in 1819, the number twenty was continued till the year 1846, when the provision that the accused may strike eight from the panel, was first adopted, as it has been at different times re-enacted and still remains in force.

On the other hand, the privilege of peremptory challenge, in any form, by the State, in a case of felony, is unkown in the law of England or Virginia or this State.

Section 21 makes no distinction between the plaintiff or prosecuting attorney and the defendant, as to the right to a special jury. If the accused might ask and obtain it, the prosecutor might do so as well. Thus, the latter might at his option deprive the accused of the right to strike off more than two of the jurors called, while section 3 allows him to strike off eight; and so the prosecutor might acquire the privilege to strike off two, without cause, when section 4 expressly prohibits him to challenge any. It would be hard to interpret provisions so squarely opposite to each other as those in question, to be applicable to the same class of cases; while it would be equally difficult to believe that the legislature intended that on the motion of a prosecuting attorney, or in the discretion of a court, a party accused of a crime the conviction of which would forfeit his life or liberty, should be deprived of the absolute right to strike off more than two jurors, while the state was likewise allowed to strike off as many, without cause.

For the sake of simplicity and brevity, I have mostly spoken in the present tense, of the provisions of the Code in question, without regard to the passage of the act of the 12th of March 1873, amending and re-enacting chapter 116 and inserting a provision as to the mode of obtaining juries in cases of felony.

For the reasons suggested, we are of opinion that from January of this year, till after the passage of the act of March, just mentioned, sections 3 and 4 of chapter 159 of the Code, furnished the law by which juries might be summoned and selected in cases of felony; and that section 21 of Chapter 116, was not applicable to the subject.

Whether ordinarily, in this class of cases, a party might waive his right to a legal jury, under sections 3 and 4 of chapter 159, and at his own request have a jury under section 21 of Chapter 116, and not be precluded from subsequent objection, need not now be decided. The cir-

cumstances and their influence on the transaction, however, demand attention. ·

In a late case in Virginia, a party was prosecuted for felony, upon an information, without indictment. He made no objection, and was convicted. In the Supreme Court of Appeals the judgment was reversed. The opinion of the court in that case, pronounced by Judge Moncure, contains this passage:

"It was argued by the Attorney General, that if the plaintiffs in error were entitled to require that they should not be put upon trial for the murder of which they were accused, unless an indictment should have first been found against them therefor by a grand jury, yet, that if it was a personal privilege, intended for their benefit, which they might therefore waive; and that they did waive it, by pleading not guilty to the information without objection, and by omitting to make any. motion in arrest of judgment. There may be some doubt whether the privilege is such a one as that they could waive it, especially if it be a constitutional right. (See what is said on this subject in Carcemi v. The People, 18 New York R. 129, a case cited by the counsel for the plaintiff in error.) But certainly, if they could waive the privilege, they ought not to be considered as having done so, without the clearest evidence of their having well understood that they had the privilge, and of their having intended to waive it. There is no such evidence in this case. They were not bound to make the objection by motion in arrest of judgment, but may make it for the first time in this court, notwithstanding their omission to make such motion. Any thing which is good cause for arresting a judgment, is good cause for reversing it, though no motion in arrest be made." 18 Gratt. 998.

When, upon the prisoners being set to the bar, the court itself has expressed the erroneous opinion that a special jury under section 21 of Chaper 116, was lawful,

and has informed the prisoner that he cannot have a trial by a jury otherwise summoned and selected, and the accused is thereby influenced to ask for the only trial the court will allow him, and consequently does not ask to strike more than two jurors from the panel, or object to the prosecuting attorney's striking from it an equal number, without cause; the accused is not precluded from questioning the legality of the proceeding, in such manner as if he had given no consent, but, at the proper time, had objected.

In this case, on the 6th of November, 1872, Guy Miller was indicted in the Circuit Court of Lewis County for the murder of Stephen Southall.

On the 1st of March 1873, the accused was arraigned and pleaded not guilty.

On the same day the prisoner—who had been confined in jail since the 1st of October previous—announced his readiness to proceed to trial, and asked that he be tried. The Prosecuting Attorney annouced that the state was ready for trial, provided, in the opinion of the Court, the right of the State would not be prejudiced by reason of the uncertain state of the law in relation to juries. Neither party asked a continuance. Thereupon the Court stated that, in the uncertain state of the law at that time in regard to juries, the Court would not proceed to try the cause, and that no trial would be had at the then present term, unless the prisoner should apply for a special jury under section 21 of Chapter 116 of the Code, as amended by the act passed February 7th 1870. And the court stated further that in the then present uncertain stated of the general jury law and in view of pending legislation on that subject, the cause ought not to be tried, but ought to be continued; and that, in the opinion of the Court, a lawful trial might be had, under the statute in relation to special juries, but that it would be well for the Prosecuting Attorney not to ask for a special jury. And the Prosecuting Attorney did not ask for a special jury. And thereupon the attorney for the pris-

oner in his presence stated that he was urgent for, and insisted upon a trial, that he did not wish to be understood as waiving his right to such a trial as the law of the land afforded him, but that in order to have a trial, the prisoner would ask for a special jury ; and the counsel for the prisoner further stated that he thought the prisoner understood the matter of such application. And thereupon the Court stated to the prisoner that the law of the Code which provided that the board of supervisors, at their January session, should select jurors for the trial of such causes, was inoperative, because by the Constitution, there was no such board in existence in the month of January last. The court thereupon further explained to the prisoner the mode, in its details, of selecting a special jury under the statutes refered to, and asked the prisoner if he understood how a jury under those statutes would be selected, and he answered that he did ; and the Court asked him if he was willing and wished to be tried by a jury so selected, and he responded that he was. And accordingly the Court directed the sheriff to form a panel of twenty jurors.

On the 3rd of March, the Sheriff called the jurors, and the court examined them and found them free from just cause of exception. From these, sixteen were selected by lot, and the prisoner and prosecuting attorney each struck off two, and the remaining twelve were sworn as the jury; and from day to day heard the evidence and the arguments.

On the 6th of March, the jury found the prisoner guilty of murder in the first degree. And the prisoner moved the court to set aside the verdict and grant him a new trial, because the State had not furnished a jury for his trial, such as, and in the manner prescribed by law; and because the jury which tried him was not such a jury and had not been drawn and formed in the manner prescribed by law ; and because he, the prisoner, was prejudiced by reason of the failure of the state to give him a trial by a jury formed in the manner prescribed by law. The Court

overruled the motion; and the accused excepted, and the facts here stated were recorded.

And on the 8th of March, the prisoner was by the Court sentenced to be hanged to death on the 27th June instant.

On the 5th of April, a writ of error to the judgment was allowed.

There is no need of further special mention of any thing that took place with reference to the jury. It is manifest that the court erred as to the law applicable to the subject, remaining in force at the time the jury was summoned and selected ; that upon such error the Court spoke and acted, and, by what it said and did, influenced the prisoner, while he protested against the requirement, yet, that he might obtain a trial, to ask for a special jury— and so to waive his peremptory right to strike eight from from the panel, and to acquiesce in the prosecutor's wrong in striking off two without cause.

The judgment is reversed, the verdict set aside, and the cause remanded, that a jury duly qualified may come and upon their oath say whether the accused is guilty of the felony of which he stands charged or not guilty, and that further proceedings may be had, according to law.

HAYMOND, President, PAULL and MOORE, Judges, concur in the foregoing opinion.

# ERRATA.

Page 66, 2d line from bottom—for " Paull and Moore, Judges, concur with Haymond, President," read "Haymond, President, and Paull, Judge, concur."

Page 209 bottom line, for word "on" after figures "220," read "no."

Page 257, line 3, of Syllabus, after " have" insert " been."

Page 262, line 27, after " Court " insert " that."

Page 262, line 31, after " and " insert " that."

Page 262, line 32, after " court," insert " they were."

Page 263, line 27, after " give" change " the" to " this."

Page 266, line 34, after " transferre l " insert " to."

Page 271, line 14, after " given " change " the " to " such."

Page 272, line 5, after "further" change " proceeding " to " proceedings."

Page 318, line 27, after " balance" change " the" to " that."

Page 329, line 25, after " on " change " this" to " the."

Page 330, line 24, change " Hall " to " Hall's "

Page 330, line 25, after " the " change " answer " to "answers."

Page 331, line 8, change " Dreasy " to "Drewry."

Page 331, line 20, omit " enmity."

Page 333, line 20, and in numerous other places, in the body of opinions, change "sec." and " chap." to "section " and " chapter," in full, though in mere citations leave the abreviations.

Page 398 line 5, in Syllabus, change " proceeding" to " preceding."

Page 399, line 47, last line, change " votes" to " voters."

Page 400, and other places, change the abreviations " chap." and "sec." in the body of the writing to " chapter " and "section," in full.

Page 412, line 18, change " governments " to "government."

Page 495, line 21, omit "and HOFFMAN." On same page, at the end of the case, say " HOFFMAN, Judge, does not concur in all the reasoning, but concurs in most of it, and in the decision."

Page 557, line 11, change " their " to "its."

Page 600, line 9, of Syllabus, change " sit" to " set."