CHARLESTON.

STATE *v.* BURNETT *et al.*

Submitted January 24, 1900—Decided April 7, 1900.

1. SPECIAL JUDGE—*Oath.*

A special judge selected as required by law to try a felony case in a criminal court, in any case at the trial of which the judge of the court cannot properly preside, must, before proceeding to exercise the authority or discharge the duties thereof, take the oath prescribed by section 5 of article IV of the Constitution, as well as that provided for in chapter 20 of the Acts of 1895. (p. 727).

2. EVIDENCE—*Dying Declarations—Homicide.*

Dying declarations, being a substitute for sworn testimony, must be such narrative statements as would be admissible had the dying person been sworn as a witness. If they relate to facts to which the declarant could have thus testified, they are admissible. Mere declarations of opinion, which would not be received if the declarant were a witness, are inadmissible.

*Quaere:* As to whether counsel for the prisoner in a murder case can agree with the prosecuting attorney upon a

member of the bar as special judge, under chapter 20 of the
Acts of 1895, to try, hear and determine such case    (pp. 731-732).

Error to Circuit Court, Fayette County.

Mose Burnett and others were indicted for murder.
Mose Burnett and  C. C. Burnett, on conviction, bring
error.

*Reversed.*

ADAM B. LITTLEPAGE and W. R. BENNETT, for plain-
tiffs in error.

ATTY. GEN. EDGAR P. RUCKER, for the State.

ENGLISH, JUDGE:

On the 11th day of July, 1898, John Hill, Carrie Hill,
Margie Burnett, Mose Burnett, and C. C. Burnett were
jointly indicted in the criminal court of Fayette County;
the indictment charging that on June 27, 1898, in the said
county, they did unlawfully and feloniously combine and
conspire together for the purpose of murdering one Joseph
Morris, and, in pursuance of said combination and conspir-
acy, on the day and year and in the county aforesaid, fel-
oniously, wilfully, maliciously, deliberately, and unlawfully
did slay, kill, and murder him, the said Joseph Morris,
against the peace and dignity of the State.   On the 20th of
January, 1899, the following order was entered in this case:
"It appearing that the Honorable J. H. Dunbar, the regu-
lar judge of this court, was interested as an attorney in
this case before his election as judge, and therefore dis-
qualified to sit as judge in this trial, and the counsel for
the prisoners and the state having agreed upon the Honor-
able C. R. Summerfield, a member of the bar of this court
and a practicing attorney of this State, to try, hear and de-
termine this cause, thereupon the said C. R. Summerfield
took the oath as prescribed by chapter 20 of the Acts of
the Legislature of 1895." And the same day the defend-
ants, John Hill and Carrie Hill, elected to be tried sepa-
rately from the other defendants, and the prisoners Margie
Burnett, Mose Burnett, and C. C. Burnett were led to the
bar of the court, in custody of the sheriff, and demurred
to the indictment against them, and moved the court to

quash the same, which demurrer and motion the court overruled. The prisoners objected and excepted, and pleaded, "Not guilty." and issue was joined thereon. The case was submitted to a jury, and resulted in a verdict finding C. C. Burnett not guilty of murder in the first degree, but guilty of murder in the second degree; the prisoner Mose Burnett not guilty of murder, but guilty of voluntary manslaughter; and the prisoner Margie Burnett not guilty. This verdict the prisoners, C. C. Burnett and Mose Burnett, moved the court to set aside because it was not according to the law and the evidence in the case, and supported said motion by affidavits, which motion was overruled, and the prisoners objected and excepted, and also moved in arrest of judgment, which motion was overruled, and the prisoners again excepted, and tendered their bill of exceptions to the various rulings and opinions of the court made and rendered in said case during the trial and after the verdict rendered, and prayed that the same be signed, sealed, and saved to them, which was accordingly done; and judgment was rendered upon said verdict, ordering that said C. C. Burnett be confined in the penitentiary for the period of fifteen years, and that Mose Burnett be confined in the penitentiary for the period of five years. From this judgment said C. C. Burnett and Mose Burnett obtained this writ of error.

In considering this case, the first question which presents itself is whether the plaintiffs in error were tried before a court of competent jurisdiction, properly constituted and empowered to pass upon the grave and important questions arising therein, involving the life and liberty of the prisoners. Was the special judge who presided at the trial properly selected? It is true that section 15 of chapter 86, of the Acts of 1891, establishing a court of limited jurisdiction in Fayette County, provides that when the judge is, from sickness or other cause, incapable of acting, or is absent, a special judge may be elected in the same manner as a judge of the circuit court. Also chapter 20, page 38, of the Acts of 1895, provides that, when the judge of the criminal court cannot properly preside at the trial of any cause therein, "the attorneys present and practicing in said court may elect a judge by ballot to hold said

court during the absence of the judge or for the trial of the cause in which the judge of said court cannot preside. The clerk of the court shall hold said election, declare the result thereof, and enter the same of record: provided, however, that the parties or their attorneys in any case in which the judge of the court cannot properly preside at the trial thereof may agree upon a judge to try or hear and determine the same, which agreement shall be entered of record in the proper order book of the court, and in such case no election of judge to try or hear and determine the case shall be held." In the case at bar it seems that the counsel for the prisoners and State agreed upon the Honorable C. R. Summerfield, a member of the bar of that court, and a practicing attorney of this State, to try hear, and determine this case, and thereupon he took the oath as prescribed by chapter 20 of the Acts of 1895. Now, it does not appear from the record that C. R. Summerfield, member of the bar and practicing attorney, was agreed upon as special judge to try, hear, and determine the case, and, so far as it appears, he may have been selected as an arbitrator. To constitute a court there must be a judge selected in the manner prescribed by law. The judge must be appointed and qualified in due form of law. 1 Bish. Cr. Proc. § 314. Here a member of the bar was agreed upon by counsel in a murder case to try, hear, and determine the case, without stating in what capacity. It is true, it appears that he took the oath that he would faithfully and impartially perform the duties of a judge of said court so long as he should continue to act as such; but his election must precede his qualification as judge, and merely taking the oath as judge would add nothing to his right to hold or exercise the duties of the office.

Let us next inquire whether, in the case of a party charged with murder, his counsel can agree with the prosecuting attorney upon a special judge to try and determine the case. Bish. Cr. Proc. § 893, speaking of trial by court with consent, says: "One form of waiver is, where authorized by statute, and the Constitution not withholding any needful jurisdiction from the tribunal, the defendant consents to be tried by the court without a jury he cannot afterwards complain. Such waiver must be personal.

The defendant's attorney, not specially empowered, cannot make it." In the criminal case of *Brown* v. *State*, 16 Ind. 496, the attorney of the defendant waived a trial by a jury of twelve men, and consented to a trial by a less number than twelve, as a jury. The defendant, though present in court, was not consulted, and did not know that he could object to the act of the attorney. It was held that such a waiver, at all events, was not binding on the defendant. In *State* v. *Miller*, 6 W. Va. 600, it was held that section 21 of chapter 116 of the Code, relative to special juries, amended in 1870, does not apply in a case of felony. In that case, the court having expressed the opinion that the prisoner was entitled to a special jury, he asked for one; and, having been convicted, on appeal to this Court it was held that under the circumstances, having asked for a special jury, he did not waive his right to be tried by the regular jury and exercise his right of challenge,—showing clearly the jealous care with which the rights of the accused in a felony case are guarded by the law. Again, in the case of *Cancemi* v. *People*, 18 N. Y. 128, the prisoner was indicted for murder, and during the trial consented to the withdrawal of a juror, and that the verdict might be rendered by eleven; and it was held that "the consent of the prisoner to his trial by less than a full jury of twelve men was a nullity, and the conviction illegal." Strong, J., in delivering the opinion of the court, said: "Criminal prosecutions involve public wrongs, 'a violation of public rights and duties,' which affect the whole community, considered as a community in its social and aggregate capacity. 3 Bl. Comm. 2; *Id.* 4, 5. * * * The state, the public, have an interest in the preservation of the liberties and the lives of the citizens, and will not allow them to be taken away 'without due process of law' (Const. art. 1, § 6), when forfeited, as they may be, as a punishment for crimes." He also quotes from 1 Bl. Comm. 133, that "natural life, being the immediate donation of the great Creator, cannot legally be disposed of or destroyed by any individual,—neither by the person himself, nor by any other of his fellow creatures, merely upon their own authority. These considerations make it apparent that the right of a defendant in a criminal prosecution to affect by

consent the conduct of the case should be much more limited than in civil cases." Concluding, the judge says: "But, when issue is joined upon an indictment, the trial must be by the tribunal and in the mode which the constitution and laws provide, without any essential change. The public officer prosecuting for the people has no authority to consent to a change, nor has the defendant. Applying the above reasoning to the present case, the conclusion necessarily follows that the consent of the plaintiff in error to the withdrawal of one juror, and that the remaining eleven might render a verdict, could not lawfully be recognized by the court at the circuit, and was a nullity." Now, if a party charged with murder could not, by consenting to a special jury, waive his right to be tried by the regular jury, could such party, by his counsel, entering into an agreement with the prosecuting attorney, select a member of the bar to hear, try, and determine his case, when the same act which allows such an agreement upon a judge provides a mode for the election of such judge by the attorneys present and practicing in the court, who are not interested in the case? It seems to me that the legislature had some object in providing two modes for selecting a judge when the regular judge was so situated that he could not properly preside. There are, no doubt, many cases presented to the intermediate court, and even to the criminal court, in which counsel might properly agree upon a special judge, under this statute; but I cannot think that this statute intends that in a case of this nature, in which the prisoners were being tried for their lives, their counsel could agree with the counsel for the State upon a member of the bar to try, hear, and determine the case.

The record shows, again, that the party who heard this case did not, before proceeding to discharge the duties of the office, take the oath prescribed by the Constitution (article 4, § 5), which provides that every person elected or appointed to any office before proceeding to exercise the authority or discharge the duties thereof, shall make oath or affirmation that he will support the Constitution of the United States and the Constitution of this State, and that he will faithfully discharge the duties of his said office

to the best of his skill and judgment, but did take the oath prescribed by chapter 20, Acts 1895, to wit, that "he would faithfully and impartially perform the duties of a judge of said court so long as he should continue to act as such; that he is not interested as counsel or attorney or otherwise in the cause to be tried by him." The oath required by the Constitution to be taken by the attorney who acted as special judge in this case was a condition precedent to any legal step in the trial, and all of the proceedings must be considered *coram non judice.*

The case having been heard and determined by a party, as special judge, who had no jurisdiction to try the same, it would serve no good purpose to pass upon the validity of the instructions given; but as the cause must be remanded, to be tried before some competent tribunal, I regard it as proper, upon the motion to set aside the verdict as contrary to the evidence, to call attention to the evidence relied on by the prosecution to convict the prisoners of the conspiracy and murder charged, and, in doing this, attention is called to the dying declarations of the deceased, which will, no doubt be attempted to be proven on a second trial, and which were allowed to be detailed by Dr. Brown in his testimony. Dr. Brown says, in asking Morris about the shooting, and after locating the place where it occurred, he inquired: " 'Do you have any idea who shot you?' He said: 'I do. Of course, I do, but I am not sure. I was shot with Burnett's little rifle, and I think Charley Burnett did the shooting.' I said, 'Why do you think that?' He said, 'Because he has threatened to do it.' Then I asked him if he had seen any one on the road who he would suspicion of having shot him. He said, 'No.' He had told me of a row that he and Mrs. John Hill had had. I says: 'Do you think Mrs. Hill did it?' He said, 'No; she didn't do it' I says, 'Do you think John did it?' He says, 'No, sir; neither of them didn't do it. They are mean enough, but they didn't do it. I think Charley Burnett did it' " This is the only testimony that implicates Charles Burnett in the homicide, except the testimony of George Flint, who states that Mrs. Hill told him that Charley and Mose Burnett would be on the mountain, waiting for him. Now, these dying declarations of Dr. Morris were inadmis-

sible, for the following reasons: They were mere declarations of opinions, and would not have been admitted if the deceased had been living, and endeavoring to give this testimony from the witness stand. In 10 Am. & Eng. Enc. Law, 376, 377, under "Dying Declarations," we find: "Dying declarations, being a substitute for sworn testimony, must be such narrative statements as would be admissible had the dying person been sworn as a witness. If they relate to facts which the declarant could have thus testified to, they are admissible. * * * Mere declarations of opinion, which would not be received if the declarant were a witness, are inadmissible. And it is immaterial whether the fact that the declaration is a mere opinion appears from the statement itself, or from other undisputed evidence, showing that it was impossible for the declarant to have known the fact stated." See *Jones* v. *State*, 52 Ark. 347, (12 S. W. 704); *Berry* v. *State*, 63 Ark. 382, (38 S. W. 1038); and Rosc. Cr. Ev., top page 54, side page 33, where it is said: "So the statement of the deceased must be such as would be admissible if he were alive and could be examined as a witness. Consequently a declaration upon matters of opinion, as distinguished from matters of fact, will not be receivable."—citing *Reg* v. *Sellers*, Carr, Supp. Cr. Law 233.

The testimony of George Flint against plaintiffs in error is only as to what he was told by Mrs. Hill, in the absence of the prisoners, Charles and Mose Burnett, as to their watching for deceased on the mountain. The alleged conspiracy to take the life of Morris is not shown by competent testimony, and in fact no testimony of any kind shows that the prisoners, Charles and Mose Burnett, entered into such conspiracy with Mrs. Hill or any other person. The testimony of George Flint should have been excluded, therefore, —as to what he states he was told by Mrs. Hill. I have thought proper to call attention to the incompetent testimony sought to be introduced before the jury upon this mistrial of the case, in order that the same testimony and dying declarations may not be relied on, should a second trial occur. The judgment is reversed, the verdict set aside, and a new trial awarded the plaintiffs in error.

BRANNON, JUDGE:

I agree to reverse, because, while the Constitution does provide for holding circuit courts where the judge is absent or cannot porperly preside, I do not think that applies to a criminal court (I do not mean a circuit court.)   If the attorneys can, in a felony case, agree on a special judge, I think the order sufficient to constitute him such, though it does not call him, "special judge" as it says he was selected "to try hear and determine" the case in the words of the statute thus making him special judge.   His functions and powers make him such.   I do not think a special judge has to take the constitutional oath of regular permanent officers but only that prescribed by the act.   I think the dying declarations and declarations of Mrs. Hill as to conspiracy not admissible though I do not see that there was objection to it in the court below or exceptions.   I think the numerous instructions should be passed on for purposes of a future trial.

*Reversed.*