381 S.E.2d 258

**Gary Paul KERNS**

v.

**Honorable James H. WOLVERTON, Judge of the Circuit Court of Nicholas County.**

**No. 18864.**

Supreme Court of Appeals of West Virginia.

May 17, 1989.

George S. Bennett, Kay, Casto & Chaney, Charleston, for Gary Paul Kerns.

BROTHERTON, Chief Justice:

The petitioner, Gary Paul Kerns, seeks a writ of prohibition against the respondents, Robert P. Martin, Special Prosecutor, and Dan Hardway, Private Prosecutor, prohibiting them from continuing the prosecution of the petitioner under indictments returned by a Nicholas County grand jury on August 16, 1988, and a writ of mandamus compelling respondent Judge James H. Wolverton to dismiss the indictments due to grand jury irregularities and the violation of petitioner's federal and state constitutional rights to a fair and impartial grand jury and his right to a speedy trial without pre-indictment delay.

A brief discussion of the events leading up to the prosecution of Kerns is necessary. Gary Paul Kerns was employed for several years as the shop manager and general supervisor for Roplate, Inc., a corporation in Richwood, Nicholas County, West Virginia, and Standard Hydraulics, Inc., located in Craigsville, Nicholas County, West Virginia. John P. Slevin owned both of these corporations and, because of his other financial and business endeavors, he entrusted Kerns with the management of these businesses. According to a memorandum filed by the respondents, Standard Hydraulics, "John P. Slevin entrusted almost total control of said entities to Petitioner Kerns." The respondents now state that in 1982, 1983, or 1984, Kerns decided to leave both corporations and that he began to embezzle hydraulic equipment from Standard Hydraulics to be used by him when he established his own competing business with a former employer. The respondents believe that much of the alleged embezzlement was accomplished in 1983 and that Kerns was assisted by Daniel Edward Morgan, an employee and parts man for Standard Hydraulics.

In 1985, Standard Hydraulics initiated a civil action against Kerns which involved the terms of their October, 1972, employment agreement and a covenant not to compete. Extensive discovery included depositions, interrogatories, and document production. However, Standard Hydraulics did not consider the possibility that Kerns had stolen or embezzled equipment from their inventory until January, 1986, when information came to light in deposition testimony taken for the civil suit. The respondents stated that "until Daniel Morgan came forward in the Winter of 1987, Standard Hydraulics had no proof but only a suspicion that Kerns was lying to cover up a theft of its inventory." Standard Hydraulics continued its investigation and on March 12, 1988, Kerns was arrested pursuant to a warrant sought in the Magistrate Court of Nicholas County by James Brogan, a private investigator for Standard Hydraulics.

On March 23, 1988, Standard Hydraulics, through its President, Slevin, and its private prosecutor in this matter, Dan Hardway, filed a Motion to Appoint a Special Prosecutor, citing a potential conflict-of-interest for the Nicholas County Prosecutor, Gary Johnson, and an assistant in his office. Johnson had previously represented a

probable witness in the criminal prosecution and his assistant was still representing him at that time.

A preliminary hearing was held on the motion on March 28, 1988, at which time Johnson disqualified himself from the prosecution of the case. Robert Martin was appointed to proceed as the special prosecutor in the case as prescribed in W.Va.Code § 7–7–8 (1984).

On May 11, 1988, a preliminary hearing was held on the embezzlement warrant with Robert Martin appearing as the special prosecutor in the matter. Dan Hardway appeared in his capacity as a private prosecutor retained by Standard Hydraulics, but he did not appear on the record or participate in either the examination of witnesses or oral argument.

However, on August 9, 1988, Dan Hardway filed a Motion to Appoint a Private Prosecutor to Assist the Special Prosecutor of Nicholas County in this matter. Hardway requested that he be appointed to assist Martin and he advised the court that he had been retained by Standard Hydraulics, who would pay for his services. Hardway's motion was granted by order of Judge Wolverton on August 10, 1988.

Both Martin and Hardway appeared before the Grand Jury of Nicholas County to question witnesses called by Martin on August 15 and 16, 1988. The respondents now state that "with the exception of the grand jurors and the witnesses, who were called one at a time in seriatim, only Mr. Martin and Mr. Hardway were in the Grand Jury Rooms ... Mr. Martin and Mr. Hardway at all times merely questioned witnesses, and at times during the proceedings only Mr. Martin or Mr. Hardway were present questioning a single witness before the Grand Jury at one certain time .... no unauthorized persons appeared before the Grand Jury and no improper conduct nor undue influence occurred."

On August 16, 1988, the grand jury returned a thirteen-count true bill against Kerns for criminal activities allegedly occurring in 1982, 1983, and 1984, including grand larceny, embezzlement, and receiving stolen goods.

Kerns made motions to dismiss the indictments on September 20, 1988, arguing that: (1) Dan L. Hardway was not authorized to appear before a grand jury and thus there was an abuse of his position as a private prosecutor; (2) neither Martin nor Hardway were sworn in or took oaths in accordance with W.Va.Code § 7–7–8 and thus they were not entitled to perform the duties of the office they purported to hold; (3) there was an abuse of authority in disqualifying the Nicholas County prosecutor as allegations made in support of disqualifying him were not sustained with grand jury indictments; and (4) there was substantial and unjustifiable pre-indictment delay in violation of his constitutional right to a speedy trial. Judge Wolverton denied Kerns' motion to dismiss the indictments on November 18, 1988, and Kerns subsequently petitioned this Court for relief.

The issue now before us is whether a private prosecutor is a person authorized to appear before a grand jury. West Virginia Rule of Criminal Procedure 6(d) states, in pertinent part, that: "[a]ttorneys for the state ... may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting." The respondents argue that private prosecutor Dan Hardway was an attorney for the State by virtue of his appointment to assist the special prosecutor and thus he was authorized to appear before the grand jury.

West Virginia Code § 7–7–8 (1984) provides, in part, that "[i]f, in any case, the prosecuting attorney and his assistants are unable to act, or if in the opinion of the court it would be improper for him or his assistants to act, the court shall appoint some competent practicing attorney to act in that case." In this case, Robert P. Martin was appointed to act as special prosecutor following the disqualification of Nicholas County prosecutor Gary Johnson and an assistant prosecutor in that office due to a possible conflict of interest. Standard Hydraulics' own private prosecutor, Dan Hardway, was later appointed, upon his own motion, to assist special prosecutor Martin in the Kerns prosecution.

▮ The only provision relating to the role of a private prosecutor that is found in the West Virginia Code is in § 7-7-8, which states that "[n]o provision of this section shall be construed to prohibit the employment by any person of a practicing attorney to assist in the prosecution of any person or corporation charged with a crime." However, in syllabus point 1 of *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980), this Court recognized that "[t]he right to obtain a private prosecutor in this State is not absolute and is subject to judicial control and review. A private prosecutor is subject to the same high standards of conduct in the trial of the case as is the public prosecutor."

▮ Unlike *Atkins*, which dealt with the conduct of a private prosecutor at trial,[1] the case now before us involves the participation of the private prosecutor in grand jury proceedings. "The presence and participation in grand jury proceedings of a person assuming the role of a private prosecutor, retained by outside interests for the purpose of obtaining an indictment against particular individuals, is generally considered highly improper." 38 Am.Jur.2d *Grand Jury* § 35 (1968). Justice Miller made essentially the same observation in footnote 3 of *Atkins*, in which he stated that "most courts have held that a private prosecutor has no right to initiate indictments before the grand jury or to appear before it.... By analogy our case of *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39, 41-43 (1979), would suggest this result." *Atkins*, 163 W.Va. at 506, 261 S.E.2d at 58.[2]

In *Frazier*, an indictment was invalidated because a state trooper who testified before a grand jury remained in the grand jury room after completing his own testimony and participated in the questioning of the witnesses against the defendant. The Court observed that "[i]t cannot be expected that law enforcement officials who are directly involved with the solution of a crime and the prosecution of its perpetrators will maintain an impartial role." 162 W.Va. at 605, 252 S.E.2d at 42.

This Court previously addressed the issue of whether private prosecutors representing a party that had obtained an injunction should be allowed to prosecute criminal contempt charges arising from subsequent violations of the injunction. In *State ex rel. Koppers Co. v. Int'l Union of Oil, Chemical & Atomic Workers*, 171 W.Va. 290, 298 S.E.2d 827 (1982), we stated that:

Although a private prosecutor is held to the same high standards as a public one, the apparent conflict of interest and pressure of "wearing two hats" militates against permitting a party's private counsel to prosecute a criminal contempt charge stemming from a civil suit; and it makes no difference whether he acts as private lawyer or by appointment as special prosecutor.

*Id.* 171 W.Va. at 293, 298 S.E.2d at 830.[3]

The reasoning found in *Koppers* applies with equal force to the facts now before us. The respondents argue that Hardway did not initiate the indictment of Kerns and that he appeared before the grand jury "merely as an assistant to the Special Prosecutor." The respondents point out that Hardway's appointment as private prosecu-

---

**1.** The defendant in *Atkins* appealed his second degree murder conviction on two grounds, one of which challenged the practice of employing private prosecutors. 163 W.Va. at 507, 261 S.E.2d at 57. However, we found no error in the fact that the private prosecutor disclosed who had employed him but did not disclose his fee, nor did we find prejudicial error resulting from the private prosecutor's degree of participation in the examination of witnesses at trial, which was greater than that of the public prosecutor. *Id.* at 59.

**2.** *See generally* Comment, *The Outmoded Concept of Private Prosecution*, 25 Am.U.L.Rev. 754,

794 (1976), in which the author concludes that "... the very presence of the private prosecutor creates a situation ripe with potential unfairness to the defendant, especially when the privately retained attorney is permitted to participate in the pretrial or discretionary stages of litigation."; Annot., 23 A.L.R.4th 397 (1983); Gershman, *Prosecutorial Misconduct* § 2 (Clark Boardman Co., Ltd. 1988).

**3.** *See generally* Note, *Private Prosecutors in Criminal Contempt Actions Under Rule 42(b) of the Federal Rules of Criminal Procedure*, 54 Fordham L.Rev. 1141 (1986).

tor gave him the same duties and responsibilities as the public prosecutor and "upon their highest oath" they assert and aver that the grand jury transcript would reveal that "the conduct of the Private Prosecutor, Dan L. Hardway, before the Grand Jury was entirely proper and within the appropriate bounds of investigation and examination of witnesses, that no discussion of evidence was ever had between Mr. Hardway and any witness or Grand Juror, and his sole purpose and function before the Grand Jury, as evidenced by the transcript, was to call witnesses and to ask questions to which responses were rendered by such witnesses." Although the transcript of the grand jury proceedings is not a part of the record now before us, knowledge of what actually transpired in the grand jury room is not relevant to our consideration of the more narrow issue in this case, which is whether the mere appearance of the private prosecutor before the grand jury was proper.

The participation of a private prosecutor in the pretrial stages of litigation should be viewed with a wary eye, as it is at this point that the public prosecutor exercises "virtually unchecked and unreviewed discretion" with respect to matters occurring outside of the courtroom.

> Although the district attorney usually must maintain control of the proceedings, because these discretionary decisions are, as a practical matter, largely unreviewable, there is always a possibility that the private prosecutor will either make or influence the regular prosecutor's making of these judgments. To the extent that the attorney retained by private, interested parties is permitted to influence this discretionary process, the

defendant may be denied the unbiased exercise of the prosecutor's judgment. Comment, *The Outmoded Concept of Private Prosecution*, 25 Am.U.L.Rev. 754, 780–81 (1976). Obviously, the presence of a private prosecutor before a grand jury could only serve to enhance the public perception that a grand jury is an instrument controlled by the desires of the prosecution.[4]

While this Court has countenanced the participation of a private prosecutor at trial in cases such as *Atkins*, we simply cannot approve of such participation at the discretionary stages of criminal proceedings. The presence of a private prosecutor in a grand jury room is inconsistent with the traditional view that the grand jury should be impartial and independent, and thus free of even the possibility that outside pressure or influence will infiltrate the process. "There must not only be no improper influence or suggestion in the grand jury room, ... there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury?" *United States v. Edgerton*, 80 F. 374, 375 (D.C.Mont. 1897). As we recognized in *Koppers*, "[j]ustice is better served by avoiding appearances of impropriety and of inherent conflicts of interest...." 171 W.Va. at 294, 298 S.E.2d at 831.

We conclude that a private prosecutor is not a person who is authorized to appear before or participate in grand jury proceedings. Although in a technical sense Hardway may have been an "attorney for the State" as a result of his appointment to assist the special prosecutor, his primary responsibility was to his client, Standard Hydraulics, who retained him to represent

**4.** Tom Wolfe reflected on this perception in his novel *The Bonfire of the Vanities:*

> Grand-jury hearings had become a show run by the prosecutor. With rare exceptions, a grand jury did whatever a prosecutor indicated he wanted them to do. Ninety-nine percent of the time he wanted them to indict the defendant, and they obliged without a blink. They were generally law-and-order folk anyway. They were chosen from long-time residents of the community. Every now

> and then, when political considerations demanded it, a prosecutor wanted to have a charge thrown out. No problem; he merely had to couch his presentation in a certain way, give a few verbal winks, as it were, and the grand jury would catch on immediately. But mainly you used the grand jury to indict people, and in the famous phrase of Sol Wachtler, chief judge of the State Court of Appeals, a grand jury would "indict a ham sandwich," if that's what you wanted.

their interest and continued to compensate him for this representation after he was appointed to assist the special prosecutor.[5]

■ A second issue which we choose to address at this point involves the petitioner's assertion that neither special prosecutor Martin nor private prosecutor Hardway were sworn in or took oaths in accordance with the requirement set forth in W.Va. Code § 7–7–8, and thus they were not entitled to prosecute this case.

The respondents refer to paragraph two of § 7–7–8 and argue that this is the only portion pertaining to the appointment of special prosecutors, and because the taking of an oath is not mentioned, they are not required to take such an oath. We disagree with this argument. Paragraph one of § 7–7–8 states that a person appointed to act as an assistant prosecuting attorney "shall take the same oath and perform the same duties as his principal." Although the same language is not included in the following paragraph regarding special prosecutors, we must conclude that this was the result of legislative oversight, as W.Va.Code § 6–1–3 (1987) provides that "every person elected or appointed to any office in this state, before proceeding to exercise the authority or discharge the duties of such office, shall take the oath or affirmation prescribed in section five of article four of the constitution of this state...."[6]

The same issue was addressed in a slightly different context in two cases decided by this Court many years ago. In *State v. Burnett*, 47 W.Va. 731, 35 S.E. 983 (1900), a special judge was elected pursuant to statute to preside over a criminal trial. He took the oath prescribed by Chapter 20, Acts 1895 "that 'he would faithfully and impartially perform the duties of a judge of said court so long as he should continue to act as such....'" *Id.* 47 W.Va. at 737, 35 S.E. at 985. However, before proceeding to discharge the duties of his newly elected office, the special judge did not take the oath prescribed by Article IV, § 5 of the West Virginia Constitution. This Court concluded that "[t]he oath required by the constitution to be taken by the attorney who acted as special judge in this case was a condition precedent to any legal step in the trial, and all of the proceedings must be considered coram non judice." *Id.*

Justice Brannon dissented in *Burnett*, stating that "I do not think a special judge has to take the constitutional oath of regular, permanent officers, but only that prescribed by the act." *Id.*, 47 W.Va. at 739, 35 S.E. at 986. Several years later Brannon had the opportunity to address the same issue in the majority opinion in *Tower v. Whip*, 53 W.Va. 158, 44 S.E. 179 (1903), and "disapprove[d]" of the conclusion reached in *Burnett* that "the acts of a special judge are coram non judice for want of oath." *Id.*, 53 W.Va. at 164, 44 S.E. at 182. Brannon wrote:

I dissented from that feature in that case, and I still think such special judge need not take that oath, as the Legislature thought, because it required another oath; but the court does not now pass on that question, not deeming it important to do so. The court is unanimous, however that question may be, that the act of the special judge is nevertheless valid as

*Id.* at 1173 (footnotes omitted).

---

5. *See generally,* Note, *Private Prosecution—The Entrenched Anomaly,* 50 N.C.L.Rev. 1171 (1972). The author discusses the inherent conflict in roles for a public prosecutor and a private prosecutor:

> ... a privately retained attorney owes his client individual allegiance, and once employed he must not act for an interest even slightly adverse to that of his client in the same general matter. Therefore, in view of the ethical and judicial restrictions imposed on the public prosecutor and the generally recognized loyalties of the private advocate, "private prosecutor" is a contradiction in terms. The high standard of impartiality demanded of a prosecutor realistically cannot be expected of the private advocate.

6. Article 4, § 5 of the West Virginia Constitution states that:

> Every person elected or appointed to any office, before proceeding to exercise the authority, or discharge the duties thereof, shall make oath or affirmation that he will support the Constitution of the United States and the Constitution of this State, and that he will faithfully discharge the duties of his said office to the best of his skill and judgment; and no other oath, declaration, or test shall be required as a qualification, unless herein otherwise provided.

the act of a de facto judge.... It is generally held that an oath, though required by law, is not indispensable, but is a mere incident, and does not confer the office, and is not the office itself, though the person be punishable for acting without taking it.

*Id.* (citations omitted).[7]   *Tower* was cited with approval in *State ex rel. Matko v. Ziegler,* 154 W.Va. 872, 179 S.E.2d 735 (1971), where this Court stated that "a regular judge who acts before taking the oath of office is as to such acts a de facto officer and ... his acts as such are valid." *Id.,* 154 W.Va. at 886, 179 S.E.2d at 744. However, in *Smoot v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468 (1977), a special judge entered orders before reaching the constitutionally required age of thirty years, and this Court held that such orders were void and of no force or effect. *Id.,* 160 W.Va. at 563, 236 S.E.2d at 472–73. "We overrule *Tower v. Whip,* and so much of *Matko v. Ziegler* as implies that a judge who lacks the qualifications mandated by the *West Virginia Constitution* for regular judges may acquire legitimacy for his orders by virtue of being a de facto judge." *Id.,* 160 W.Va. at 563, 236 S.E.2d at 472.

■ In this case, both Martin and Hardway were appointed to their prosecutorial positions after motions were made to Judge Wolverton. Even though these appointments were temporary and pertained only to the Kerns prosecution, we believe nonetheless that the constitutional requirement should be observed and that a person appointed to any office should take the prescribed oath before exercising the authority being granted in a given situation, thus guarding against the possibility that their subsequent actions could be invalidated by this Court.

We need not address the issue of whether the petitioner was prejudiced by Martin and Hardway's failure to take their constitutional oath, as we dismiss the indictments against Kerns on other grounds. However, we reiterate our position that "every person elected or appointed to any office in this state" is required to take the constitutional oath of office, which is an oath separate and distinct from the oath that all licensed practicing attorneys are required to take.

Having concluded that private prosecuting attorney Dan Hardway was not a person who was authorized to appear before the grand jury, we find that the petitioner is clearly entitled to the relief sought and hereby order that the respondent Judge Wolverton dismiss the indictments returned against the petitioner, Gary Paul Kerns, on August 16, 1988.[8]

Writ of mandamus granted;

Writ of prohibition denied.

---

**7.** *See generally People v. Kovacs,* 72 Misc.2d 39, 338 N.Y.S.2d 155 (1972), in which the court rejected the defendant's claim that the special district attorney was not qualified to act and that he appeared as an unauthorized person before the grand jury. The court found that the special district attorney took his oath of office on February 7, 1972, and filed his oath on February 8, 1972, and thus was qualified to act when he presented the case to the grand jury on February 11, 1972. *Id.,* 338 N.Y.S.2d at 157; *but cf. State v. Olson,* 249 Iowa 536, 86 N.W.2d 214 (1957), in which the defendant contended that the assistant county attorney was an improper person present before the grand jury because he had failed to qualify as an assistant by posting bond and taking an oath of office. The court approved of the assistant county attorney's appearance before the grand jury even though he took no oath of office other than his oath as a practicing attorney and posted no bond. The court stated that "[a]ttorneys are officers of the court, and the oath taken by them when admitted to practice is quite as full and complete as that of the county attorney." *Id.,* 86 N.W.2d at 219.

**8.** As this Court has often recognized, "[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy at law." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

In this case the petitioner seeks both a writ of prohibition against Special Prosecutor Martin and Private Prosecutor Hardway and a writ of mandamus against Judge Wolverton. We choose to dispose of this case by simply granting the writ of mandamus and ordering that the indictments be dismissed.