## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FILED

December 21, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| JENNIFER O. WILSON, | ) | FOR PUBLICATION |
| Appellee, | ) | Filed: December 21, 1998 |
| | ) | Hon. Muriel Robinson, |
| | ) | Judge, |
| Vs. | ) | |
| | ) | DAVIDSON CIRCUIT |
| LARRY ARNOLD WILSON, | ) | |
| | ) | Supreme Court |
| Appellant. | ) | No. 01S01-9807-CV-00130 |

**FOR APPELLANT:**
Earl J. Porter, Jr.,
Nashville, Tennessee

John J. Hollins, Sr.
David L. Raybin
Hollins, Wagster & Yarbrough, P.C.
Nashville, Tennessee

**FOR APPELLEE:**
John Herbison
Nashville, Tennessee

**FOR AMICUS CURIAE**:

**Richardson and Baker**
Clark Lee Shaw
Nashville, Tennessee

**State of Tennessee**
John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Kathy Morante
Deputy Attorney General
Nashville, Tennessee

**Family Law Section of the**
**Memphis Bar Association**
Joy Tanner Bomar
Memphis, Tennessee

**Family Law Section of the**
**Tennessee Bar Association**
Larry Rice
Memphis, Tennessee

# O P I N I O N

COURT OF APPEALS REVERSED.                    DROWOTA, J.

We granted this appeal to determine whether a private attorney representing the beneficiary of a court order in a civil case may prosecute a criminal contempt action alleging a violation of the order. After due consideration, we conclude that no constitutional principle nor ethical standard automatically disqualifies the private attorney for the beneficiary of the order from prosecuting a contempt action for a violation of the order. Accordingly, we reverse the judgment of the Court of Appeals which adopted an automatic rule of disqualification and remand this cause to the trial court for further proceedings consistent with this decision.

## BACKGROUND

The plaintiff, Jennifer O. Wilson, filed suit for divorce against the defendant, Larry A. Wilson, in the Circuit Court of Davidson County. During the course of this litigation, certain restraining orders were issued by the court, and thereafter, the defendant filed a petition for contempt against the plaintiff alleging that she had violated an order of the trial court. The petition failed to specify whether civil or criminal sanctions were being sought.

The plaintiff responded by filing a counterclaim for contempt against the defendant, and a motion to disqualify the defendant's private counsel from prosecuting the contempt action. The trial court denied the motion to disqualify, but granted the plaintiff permission to seek an interlocutory appeal from the ruling. See Tenn. R. App. P. 9

The defendant thereafter filed a second petition for contempt alleging a violation of an order of the trial court. This petition was accompanied by a notice of constitutional

rights. The trial court issued an order to show cause. In response, the plaintiff again filed a

motion to disqualify defendant's private counsel from prosecuting the criminal contempt

action on the basis that counsel was simultaneously representing the defendant in the

underlying divorce proceedings. The trial court again denied the motion but granted the

plaintiff permission to seek an extraordinary appeal. See Tenn. R. App. P. 10.

The Court of Appeals granted and consolidated the interlocutory and extraordinary

appeals. Relying upon a decision of the United States Supreme Court,[1] the Court of

Appeals reversed the trial court's denial of the motions to disqualify and held that "an

appointment of an 'interested' special prosecutor in a criminal contempt proceeding is

contrary to the ethical standards required of lawyers in the practice of law, as well as the

high ethical standard required of the judicial process and is thereby prohibited."

Thereafter, we granted the defendant's application for permission to appeal, and for

the reasons that follow, now conclude that no constitutional principle nor ethical standard

automatically precludes a private attorney representing the beneficiary of a court order

from prosecuting a contempt action for an alleged violation of the order. Accordingly, we

reverse the judgment of the Court of Appeals and remand to the trial court for further

proceedings consistent with this decision.

## ANALYSIS

### A. Standard of Review

---

[1]Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

Recently, in <u>Black v. Blount</u>, 938 S.W.2d 394 (Tenn. 1996), this Court held that trial courts have both the inherent authority to initiate contempt proceedings and the concomitant authority to appoint private attorneys to prosecute such contempt actions. <u>Id.</u> at 402-03. Unlike this case, however, the conduct in <u>Black</u> for which contempt proceedings had been instituted did not involve the alleged violation of a court order. Also unlike this case, the private attorney appointed by the trial court to prosecute the contempt proceeding in <u>Black</u> did not represent any of the litigants in the underlying action from which the contempt charges arose. Accordingly, in <u>Black</u> we did not address, and in fact expressly reserved for a case in which it was squarely presented, the question of whether a private attorney already representing the beneficiary of a court order in a civil case may prosecute a contempt action alleging a violation of that order. <u>Id.</u> at 402. It is that narrow question of law which now is squarely presented in this appeal.[2] Since this is a question of law, our review is *de novo* upon the record before this Court with no presumption of correctness attaching to the decisions of the lower courts. <u>Warren v. Estate of Kirk</u>, 954 S.W.2d 722, 723 (Tenn. 1997); <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997).

**B. The <u>Young</u> Decision**

Prior to 1987, the leading case on this issue was <u>McCann v. New York Stock Exchange</u>, 80 F.2d 211 (2nd Cir. 1935), in which Judge Learned Hand commented that to

---

[2]The briefs of the parties to this appeal as well as the briefs filed on behalf of the *amicus curiae* urge us to decide other issues relating to contempt proceedings. We decline to address issues not presented by this appeal.

prosecute an indirect criminal contempt, committed outside the presence of the court, "the judge may prefer to use the attorney of a party, who will indeed ordinarily be his only means of information....  There is no reason why he should not do so, and every reason why he should...."  Id. at 214.  In Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), however, the United States Supreme Court parted company with Judge Hand when it held that federal judges could no longer appoint a private lawyer representing the beneficiary of a court order to also prosecute a criminal contempt action alleging a violation of the order.

Young began as a trademark infringement action brought by Vuitton et Fils, S.A., (Vuitton), a manufacturer of expensive handbags, against several businesses which were manufacturing and selling inexpensive imitations of Vuitton's merchandise.  In July of 1982, the parties settled the trademark infringement case.  Under the settlement agreement, the defendants were required to pay damages and enjoined from using Vuitton's registered trademark.  Suspecting that the defendants had violated the injunction, Vuitton in early 1983 commissioned a private firm to conduct an undercover investigation.  Upon discovering evidence of noncompliance, Vuitton's attorney asked the district court to appoint him and his colleagues as special counsel to prosecute a criminal contempt action for violation of the injunction.  The district court found probable cause to believe that the defendants were violating the injunction and appointed Vuitton's attorney and his colleagues to represent the United States in continuing the investigation and in prosecuting the contempt action.  Significantly, the appointment conferred upon Vuitton's attorneys all the powers ordinarily possessed by a government prosecutor, yet the United States Attorney's Office took no part in the prosecution of the case beyond wishing the special

prosecutor "good luck." Id., 481 U.S. at 791-92, 107 S.Ct. at 2129.

Over the next month, the special prosecutor compiled more than 100 audio and video tapes of meetings and wiretapped telephone conversations between the defendants and investigators. With that evidence, the special prosecutor requested and obtained an order from the district court directing the defendants to show cause why they should not be cited for contempt for either violating or aiding and abetting the violation of the injunction. The defendants filed motions opposing both the show cause order and the appointment of Vuitton's attorneys as special prosecutor. The defense motions were denied, and eventually two of the defendants entered guilty pleas to contempt. Several other defendants were tried and convicted of contempt. Id., 481 U.S. at 792, 107 S.Ct. at 2129.

Before the United States Supreme Court, the defendants advanced two primary arguments as grounds for reversal of their convictions. First, they contended that a district court lacks authority to appoint private counsel to prosecute a contempt action and that only the U.S. Attorney may initiate a criminal contempt prosecution. Id., 481 U.S. at 793, 107 S.Ct. at 2130. Alternatively, the defendants maintained that a district court may not appoint an attorney representing the beneficiary of a court order to prosecute a criminal contempt action alleging a violation of that order. Id., 481 U.S. at 802-14, 107 S.Ct. at 2135-38.

In rejecting the defendants' first argument, the Court held that district courts have inherent power both to initiate contempt proceedings to punish disobedience to their orders and to appoint a private attorney to prosecute such contempt actions. Id., 481 U.S. at 793,

-6-

107 S.Ct. at 2130.[3]  The Court commented that this power to appoint should be exercised sparingly, and only after the public prosecutor has denied a district court's request to prosecute a contempt.  Id., 481 U.S. at 801, 107 S.Ct. at 2133.

The Supreme Court, however, agreed with the defendants' second argument and found that the district court erred by appointing an attorney who was representing the beneficiary of a court order to prosecute a criminal contempt for an alleged violation of the order.  The Court first emphasized that private attorneys appointed to prosecute criminal contempt actions represent the interest of the United States in vindicating a court's authority.  Id., 481 U.S. at 804, 107 S.Ct. at 2136.  A private attorney prosecuting a criminal contempt, therefore, must assume the unique responsibility of a government prosecutor which is to pursue justice and guarantee that "guilt shall not escape nor innocence suffer."  Young, 481 U.S. at 802-03, 107 S.Ct. at 2135 (quoting Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)).

While recognizing that a private party's interest in obtaining the benefits of a court order may sometimes coincide with the special prosecutor's pursuit of justice, the Court stressed that the two interests may also at times diverge.  Young, 481 U.S. at 805, 107 S.Ct. at 2136.  As examples of the possible divergence, the Court hypothesized that an attorney for a private client serving as special prosecutor of a contempt action may be tempted either to bring a tenuously supported prosecution or to abandon a meritorious prosecution if either action would inure to the benefit of his or her private client.  The Court declared

---

[3]This Court in Black relied upon this portion of the Young decision as support for our holding that trial courts in Tennessee have both the inherent power to initiate contempt proceedings and the concomitant power to appoint private counsel to prosecute such contempt actions.

that appointing counsel for an interested party to prosecute a criminal contempt action "at a minimum create[s] opportunities for conflicts to arise and create[s] at least the appearance of impropriety." Id., 481 U.S. at 806, 107 S.Ct. at 2137. In concluding that lawyers already representing an interested party have an insurmountable conflict of interest if they also undertake to prosecute a criminal contempt case, the Court stated:

> Between the private life of the citizen and the public glare of criminal accusation stands the prosecutor. That state official has the power to employ the full machinery of the state in scrutinizing any given individual. Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice. A prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance, for such an attorney is required by the very standards of the profession to serve two masters.

Id., 481 U.S. at 805, 107 S.Ct. at 2138.

The Young Court did not base its decision upon constitutional grounds but instead announced the rule of disqualification in its supervisory role over lower federal courts. Though we are not constitutionally bound to follow Young, the rationale for the decision was based largely upon the Model Code of Professional Responsibility which, as modified, currently governs the conduct of attorneys in Tennessee. See Tenn. Sup. Ct. R. 8. As explained below, however, we decline to adopt the rule of automatic disqualification announced in Young.

## C. Constitutional Principles

Although appellate courts ordinarily do not address constitutional issues if a case may be decided upon non-constitutional grounds, in this case a decision on the constitutional issue is necessary to fully determine the case and the rights of the parties. State v. Hall, 958 S.W.2d 679, 695 n. 15 (Tenn. 1995). This Court previously has opined that "[d]ue process . . . calls for such procedural protections as the particular situation demands." Phillips v. State Board of Regents, 863 S.W.2d 45, 50 (Tenn. 1993) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In determining what procedural protections a particular situation demands, three factors must be considered: (1) the private interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Phillips, 863 S.W.2d at 50; Matthews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Though we have found no other judicial decision [4] addressing the constitutional aspect of the issue in this appeal, in our view, application of the three-pronged balancing test clearly indicates that due process does not preclude allowing an attorney who represents the beneficiary of a civil court order to simultaneously prosecute a contempt action for an alleged violation of the order.[5]

---

[4]The plaintiff cites several cases in which courts have held that due process precludes a private attorney from representing a victim in civil litigation and simultaneously serving as special prosecutor in a criminal case involving the same conduct. See e.g. State v. Eldridge, 951 S.W.2d 775 (Tenn. Crim. App. 1997); Commonwealth v. Hubbard, 777 S.W.2d 882 (Ky. 1989); State v. Storm, 661 A.2d 790 (N.J. 1995); Kerns v. Wolverton, 381 S.E.2d 258 (W.Va. 1989); but see Hopkins v. State, 429 So.2d 1146 (Ala. Crim. App. 1983). Those cases clearly are distinguishable from the issue in this appeal.

[5]But see John D. Bessler, The Public Interest and the Unconstitutionality of Private Prosecutors, 47 Ark.L.Rev. 511, 575 (1994); Patricia Moran, Note, Private Prosecutors in Criminal Contempt Actions Under Rule 42(b) of the Federal Rules of Criminal Procedure, 54 Fordham L.

At stake is a contempt defendant's liberty or property interest. A defendant found guilty of general contempt in Tennessee may be punished by fine or by imprisonment, or both. However, any fine imposed may not exceed fifty dollars and any term of imprisonment may not exceed ten days. Tenn. Code Ann. § 29-9-103 (Supp. 1998). The risk that a defendant's liberty interest will be erroneously deprived by the current practice which allows a litigant's private attorney to prosecute contempt is slight because it is the trial judge, not the private attorney, who actually decides whether a contempt action may proceed. See Tenn. R.Crim. P. 42(b). Since the risk of erroneous deprivation is minimal, there is no real benefit or value in adopting a rule which would preclude a litigant's private attorney from prosecuting a contempt. Finally, tremendous fiscal and administrative burdens would result from a substitute procedural requirement. Contempt proceedings often arise in domestic relations cases in state courts. However, unlike the federal system, there is no fund in Tennessee from which to compensate private counsel appointed to prosecute criminal contempt actions.[6] It is unrealistic to expect district attorneys to

Rev. 1141, 1149-51 (1986) (applying the three-pronged balancing test and concluding that Due Process precludes allowing an attorney representing the beneficiary of a court order to also prosecute a contempt action alleging a violation of the order).

[6]Contrary to the plaintiff's assertions, our decision in Black, supra, does not support the proposition that a trial court may routinely tax attorney's fees as costs in contempt proceedings. In fact, the rule of Ferguson v. Paycheck, 672 S.W.2d 746 (Tenn. 1984), which was applied in Black, specifically does not allow a trial court to tax as costs fees for attorneys appointed to serve the interests of litigants. Though the only interest at issue in Black was the vindication of the court's authority, most contempt cases will serve to both vindicate the court's authority and to benefit a litigant by enforcing a court order. Thus in the vast majority of contempt proceedings, a trial court may not tax attorney's fees as costs.

prosecute contempt actions arising from alleged violations of civil court orders.[7] District attorneys already have a heavy case load prosecuting violations of the general criminal laws. See State ex rel O'Brien v. Moreland, 778 S.W.2d 400, 406 (Mo. App. 1989)(discussing similar practical problems surrounding the rule of automatic disqualification). Were we to hold that due process precludes a litigant's private attorney from prosecuting contempt proceedings, many citizens would be deprived of the benefits to which they already have been adjudged entitled by state courts and many state court orders would remain unenforced. The minimal risk that a defendant will be erroneously deprived of his or her liberty interest if a litigant's private attorney prosecutes a contempt proceeding is far outweighed by the very real fiscal and administrative burdens certain to accompany the adoption of a substitute procedure.[8] We hold that Due Process does not mandate adoption of a rule which automatically disqualifies a litigant's private counsel from prosecuting a contempt action.

---

[7]While this Court stated in Black, supra, that a trial court should appoint a private attorney only after the district attorney refuses a request of the court to prosecute a contempt action, that statement applies only if no attorney familiar with the grounds for contempt is readily available to prosecute the action. For example, in Black the only attorney familiar with the behavior allegedly constituting contempt was also the primary witness in the case and therefore could not prosecute the contempt action. See Tenn. Sup. Ct. R. 8, DR 5-101 ("lawyer shall not accept employment in ... litigation if the lawyer knows or it is obvious that the lawyer ... ought to be called as a witness").

[8]Despite the dissent's criticism, it is entirely appropriate under both the state and federal constitutions to consider the fiscal burdens which would result from adoption of a rule of automatic disqualification. See Phillips, 863 S.W.2d at 50. Consideration of the "checkbook" in fact was mandated by the United States Supreme Court in Matthews, 424 U.S. at 335, 96 S.Ct. at 903. Since the dissent agrees with the majority's conclusion that Due Process does not mandate adoption of a rule of automatic disqualification, its criticism of the underlying analysis is puzzling. Significantly, in all the cases cited by the dissent in support of its criticism, either this Court or the United States Supreme Court concluded that the constitutional rights of the defendants outweighed the fiscal or administrative burdens associated with the new procedures. In none of those cases was the recognition of additional procedures based solely upon a potential and theoretical ethical conflict of interest, which is the only ground advanced by the dissent in this case to support adoption of a rule of automatic disqualification.

## D. Ethical Standards

We have also found no ethical standard which mandates adoption of an automatic rule of disqualification. While the <u>Young</u> decision is theoretically attractive, many practical differences between the federal judicial system and the courts of Tennessee exist which ameliorate the perceived conflict of interest identified in <u>Young</u>. For example, unlike the private attorneys appointed as special prosecutors in <u>Young</u>, private attorneys prosecuting criminal contempt actions in Tennessee are not ordinarily clothed with all the powers of a public prosecutor. Indeed, there is no hint in this appeal that the defendant's attorney has been given the powers of the public prosecutor in pursuing these contempt actions. Here, unlike <u>Young</u>, we simply are not dealing with a private attorney who has "the power to employ the full machinery of the state in scrutinizing any given individual." <u>Young</u>, 481 U.S. at 805, 107 S.Ct. at 2138. The potential for abuse and overreaching about which the <u>Young</u> Court expressed concern therefore does not exist in Tennessee.

Furthermore, we do not believe that appointing a private attorney who represents the beneficiary of a court order to prosecute a contempt action for an alleged violation of that order creates the potential for conflict and the appearance of impropriety. Contempt of court is intended to vindicate a court's authority and *to maintain the integrity of court orders.* <u>State v. Winningham</u>, 958 S.W.2d 740 (Tenn. 1997). In a contempt proceeding alleging a violation of a court order, therefore, the interest of the private litigant coincides with the interest of the court. The common goal is to force compliance with the court order. Although the motivational reasons may differ, the interest is the same. The private lawyer is ethically obligated to exercise his or her independent professional judgment to protect the common interest. Tenn. Sup. Ct. R. 8, DR 5-105. That a private lawyer is

"interested" in protecting the interest of his or her client and the legitimate concern of the court does not detract from the integrity of the judicial process when the interest of the client and the concern of the court is the same -- enforcement of a court order.

Additionally, in our view a litigant's private attorney is no less likely to seek justice and no more likely to be influenced by improper motives than a public prosecutor or a disinterested private attorney. We readily acknowledge that an attorney representing the beneficiary of a court order will zealously attempt to enforce compliance with the order if allowed to prosecute a contempt proceeding. There is, however, nothing improper about zealous prosecution. Even the Young Court recognized that in our adversary system, "prosecutors are necessarily permitted to be zealous in their enforcement of the law." Young, 481 U.S. at 806, 107 S.Ct. at 2137. If a prosecutor is "honestly convinced of the defendant's guilt, the prosecutor is free, indeed obliged, to be deeply interested in urging that view by any fair means. True disinterest on the issue of such a defendant's guilt is the domain of the judge and the jury--not the prosecutor." Wright v. United States, 732 F.2d 1048, 1056 (2nd Cir. 1984). While prosecutors are expected to proceed with "eagerness and vigor" and are permitted to "strike hard blows," they may not strike "foul ones." Berger, 295 U.S. at 85, 55 S.Ct. at 633. The ethical rules governing the conduct of all attorneys in Tennessee should prevent a private attorney representing the beneficiary of a court order from becoming overzealous or from striking foul blows.

Furthermore, the procedural safeguards of Tenn. R. Crim. P. 42(b) ameliorate concerns that a private attorney will improperly institute a contempt proceeding in contravention of the interests of justice. In pertinent part that rule provides as follows:

-13-

> A criminal contempt . . . shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. <u>The notice shall be given orally by the judge in open court in the presence of the defendant, or on application of the district attorney general or an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.</u> The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing except with the defendant's consent. Upon a verdict of finding of guilt the court shall enter an order fixing the punishment.

Tenn. R. Crim. P. 42(b) (emphasis added.) Under this rule, a contempt action can not proceed unless the trial court issues an order to show cause after reviewing a written application of the private attorney. The trial court obviously will realize when the attorney representing the beneficiary of the court order in the underlying civil litigation is also the attorney filing the application to institute contempt. The trial court will be in a position to carefully scrutinize the application. The judicial oversight prescribed by Rule 42 virtually eliminates any danger that contempt actions will proceed if instituted for improper motives or without regard to the interests of justice. To further guard against the possibility of abuse, however, we hold that the provisions of Tenn. R. Civ. P. 11 apply to the written applications which attorneys must file with the trial court to institute contempt proceedings. It is certainly unlikely that attorneys will risk Rule 11 sanctions by filing unjustified or improper contempt applications.

Accordingly, we hold that allowing an attorney for the beneficiary of a court order to prosecute a contempt proceeding alleging a violation of that order does not involve an inherent or potential conflict of interest sufficient to warrant adoption of an automatic rule

of disqualification.[9]

## CONCLUSION

For the reasons previously explained, we conclude that no constitutional principle nor ethical standard automatically disqualifies a private attorney representing the beneficiary of a court order from simultaneously prosecuting a contempt action which alleges a violation of the order. Accordingly, we reverse the judgment of the Court of Appeals which adopted an automatic rule of disqualification and remand this cause to the trial court for further proceedings consistent with this decision.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**

Anderson, C.J.
Holder, Barker, JJ.

Birch, J. - Separate Dissenting Opinion

---

[9]Surprisingly few state courts have addressed the issue in this appeal. In a decision rendered before Young, the West Virginia Supreme Court employed similar rationale and adopted a rule of automatic disqualification. State ex rel. Koppers Co. Inc. v. International Union of Oil, Chemical and Atomic Workers, 298 S.E.2d 827 (W. Va. 1982). Some state courts have followed Young with little or no analysis of the issue. See DiSabatino v. Salicete, 671 A.2d 1344 (Del. 1996); Department of Social Services ex rel. Montero v. Montero, 758 P.2d 690 (Haw. App. 1988). Other states courts, also with little or no discussion, have not applied a rule of automatic disqualification. Marcisz v. Marcisz, 357 N.E.2d 477 (Ill. 1976); Lamb v. Fowler, 574 So.2d 262 (Fla. App. 1991); In re Marriage of Betts, 558 N.E.2d 404 (Ill. App. 1990).