IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 9, 2000

## DONALD MCLEAN ANDREWS v. BARBARA ROGERS ANDREWS

**Appeal from the Circuit Court for Sumner County**
**No. 6498-C     Tom E. Gray, Chancellor**

---

**No. M2000-00163-COA-R3-CV - Filed June 21, 2001**

---

In this post-divorce case, each party sought modification of the child support order.  The obligor father sought a decrease based on the older child's eighteenth birthday and graduation from high school.  The obligee mother sought an increase based upon her belief that the father's income had increased.  The trial court ordered a decrease based upon the older child's emancipation, but increased the amount due for the remaining minor child.  The mother appeals, contending that the trial court failed to consider some of the father's work related benefits when setting the support. Because the mother had the burden of proving additional income to the father, and because she failed to meet that burden, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J,. M.S., and WILLIAM C. KOCH, JR., J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Barbara Rogers Andrews.

John R. Phillips, Jr., Gallatin, Tennessee, for the appellee, Donald McLean Andrews.

### MEMORANDUM OPINION[1]

Barbara Rogers Andrews ("Mother") and Donald McLean Andrews ("Father") were divorced in 1989.  They have two daughters, the older, born in 1981 is now an adult, while the younger, born in 1985, is still a minor.

---

[1] Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

When the parties divorced, they were awarded joint legal custody of the children, with Mother having primary physical custody. Father was ordered to pay $600 per month in child support. In 1995, Mother petitioned for an increase in child support based upon an increase in Father's income. The trial court increased the obligation to $1,133 per month based upon its determination of Father's income as $59,800. Mother appealed that ruling and this court remanded for the trial court to make written findings of fact regarding its consideration of Father's bonuses and his less than standard visitation, because he lived out of state. *See Piper v. Andrews*,[2] No. 01A01-9612-CV-00570, 1997 WL 772127 (Tenn. Ct. App. Dec. 17, 1997) (perm. app. denied June 8, 1998). On remand, the trial court increased the child support obligation to $1,226 per month, based upon Father's less than standard visitation.

This action commenced in February 1999 when Father petitioned the trial court to reduce his child support obligation based upon the older daughter's upcoming eighteenth birthday and graduation from high school. In April 1999, Mother filed a Counterpetition, seeking, *inter alia*, an increase in child support based upon her belief that Father's income had increased since the prior modification.

The hearing was held in November 1999. Father testified that he owned Mobile Sports Medicine Systems, a company that provides on-site physical therapy to cowboys and race car drivers. He said he received a salary of $54,000, an educational allotment of $7,000 to $8,000, and $2,000 for serving on the company's board of directors. His W-2 form for the previous year showed his income as $64,308. He also testified that the company provided him with a Chevrolet Suburban and that the company owned a vacation condominium to which he and other employees had access. Father testified to having other employment benefits as well, but said he did not know the value of those benefits. Mother presented no proof of the value of any benefits to Father, instead relying upon a cross-examination based upon Father's personal and corporate tax returns.

The trial court found that Father's obligation for the older child had terminated. The court also found that, according to the child support guidelines, and taking into account interest income and the company vehicle, Father's obligation for the one minor child was $823 per month. The court increased the amount to $855 based upon the less than standard visitation. Mother appeals, contending that the trial court did not properly consider Father's employment benefits when setting the child support.

## I. Standard of Review

We review this case *de novo* on the record with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999); Tenn. R. App. P. 13(d). No presumption of correctness attaches

---

[2]Mother had remarried before the first appeal, but divorced Mr. Piper before this action commenced, and resumed use of the name Andrews.

to the trial court's decisions regarding questions of law. *Wilson v. Wilson*, 984 S.W.2d 898, 900 (Tenn. 1998).

## II. Analysis

Mother contends the trial court erred by failing to consider all of Father's income when setting his child support obligation. She claims that Father received the value of the payments on the Suburban as a benefit, and that "it is inferable" that the company paid for gasoline, oil and insurance on the vehicle, making the benefit worth more than $6,000. She further contends that the company condominium is a type of "in kind" compensation that the trial court should have considered, and that Father received "benefits of unknown value by virtue of his participation in the 'defined benefit plan' and the 'cafeteria plan.'" Finally, she contends that Father "received at least part of the interest income of $1,800 reported on his and [his wife's] 1998 joint tax return." She bases her arguments on the following provision of the Child Support Guidelines:

> Gross income shall include all income from any source (before taxes and other deductions), whether earned or salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest unearned, and includes but is not limited to, the following: wages, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment. Income from self-employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income. Depreciation, home offices, excessive promotional, excessive travel, excessive car expenses or excessive personal expenses, etc., should not be considered reasonable expenses. "In kind" remuneration must also be imputed as income, i.e., fringe benefits such as a company car, the value of on-base lodging and meals in lieu of BAQ and BAS for a military member, etc.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a).

A party seeking modification of a child support order has the burden of proving that such a modification is warranted. *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). In the case before us, each party sought modification. Thus, each party had the burden of proof on the matter claimed. Father had the burden of proving that he was entitled to a reduction in child support based on the emancipation of the older child. He met his burden, and the trial court properly terminated his obligation for the older child.

Mother had the burden of proving that she was entitled to an increase in support for the younger child based upon Father's increased income. She presented no evidence of Father's income or the value of any employment benefits, instead offering a very limited cross-examination which

failed to show that she was entitled to additional child support. We cannot find an error in the trial court's ruling based upon the evidence before it. Quite simply, Mother failed to carry her burden of proof.

Regarding the company vehicle, no testimony or proof showed that it provided any personal benefit to Father. He was not even asked if it was his only vehicle or if he drove it for his personal errands. The testimony regarding the company vehicle was as follows, in its entirety:

Q: Now, do you receive a motor vehicle that you drive, and is furnished to you by your company?
A: I have a company car, yes.
Q: What kind is it?
A: It's a 1996 Suburban.
***
Q: Is your Suburban paid for?
A: No.
Q: And does the company pay the note on it?
A: Yes.
Q: And how much is it ?
A: I don't really even know - - $500.

Based on the testimony, we cannot find an error in the trial court's failure to consider the entirety of the monthly payments on the vehicle as income to Father.[3] Similarly, we cannot assign error to the court's failure to consider gasoline, insurance and maintenance as income to Father. No testimony at all was presented regarding those expenses.

Mother next argues that the company condominium to which Father has access is a form of "in kind" remuneration which the trial court should consider when setting the child support obligation. The evidence regarding the condominium was elicited from Father on cross-examination, and is also repeated here in its entirety:

Q: Now, you have a condo that the corporation pays; is that correct?
A: The corporation has a town home, yes. We use it for the corporation.
Q: And that's just for you?
A: No, it's for all our employees, and all of our employees use it very regularly. It is as a compensation for the hours that they have to spend away from their families . . . They take their families once a year to this location. And that's intended to be a part of their compensation for what they do for our company and the amount of time they have to spend away from their family.

_____

[3]Even if Father used the vehicle extensively for his personal benefit, without more evidence, we could not say that the monthly payment on the vehicle equaled its value to Father.

Father was not asked whether he took advantage of the condominium, and if so, how much he used it or what the value of the time spent there might be. Based upon the lack of evidence of any value to Father, we find that the trial court correctly declined to consider the condominium as income to Father.

Mother next argues that Father receives "benefits of unknown value by virtue of his participation in the 'defined benefit plan' and the 'cafeteria plan.'" The testimony regarding those benefits was as follows:

Q: Are you given any other type of compensation, such as payments, 401K's, or any kind or pension or retirement accounts?
A: Yes.
Q: And the company pays for that, or do you match it, or how does that work?
A: It's paid by the company. . . .
Q: Well, I see a figure here [on the corporate tax return] of pension profit sharing plan is $35,000. And an employee benefit plan, $19,000. Would the benefit plan be for your health insurance for your employees?
A: Yes.

The amounts mentioned related to benefits for all of the corporation's employees. No evidence was presented as to what portion of the total benefits inured to Father. Even if Mother could show what amount of the benefit package benefitted Father, she has not shown that such benefits should be considered when computing income. The Guideline quoted above includes "pensions" as income when the payments are made from those accounts to the obligor parent. It does not include ordinary payments into a pension account for the obligor's future retirement. Nor does it include employer provided health insurance for the obligor as "income." This issue is without merit.

Mother also argues that Father "received at least part of the interest income of $1,800 reported on his and [his wife's] 1998 joint tax return." In fact, Father admitted that some portion of the interest was his.

Q: Okay. Now, what you've said is that some portion of the [$1,804] of interest may be attributable to you?
A: Yes.
Q: But not all of it?
A: No.
Q: And you really don't know what portion of that is attributable?
A: No. . . .

The trial court already considered the undetermined amount of interest when it increased Father's income from the $64,308 on his W-2 form to $66,000 for purposes of calculating the child support. The court stated from the bench, "I'm setting the child support based on an income of $66,000 per

year, by adding some interest and ordinary dividends back in; that's $5,500 per month."[4]  This issue is also without merit.

### III.  Conclusion

In conclusion, we find no error in the trial court's order and affirm it.  Costs are taxed to the appellant, Barbara Rogers Andrews, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[4]From the bench, the court stated that it considered that some portion of the interest income on the joint tax return was attributable to Father, but its order stated:

> In calculating this level of support, the Court has determined the Father's income or income potential to be $66,000.00 per year, taking into account his salary and other remuneration from Mobile Sports Medicine Systems, Inc., including his use of a Chevrolet Suburban vehicle.

Although the trial court did not assign a dollar value to the company vehicle or to Father's portion of the interest income, we do not find that the evidence preponderates against a finding that either or both were properly included in the $1,700 added to Father's income.