IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2008

## TOM SALTER v. DARYL SANDERS

**Appeal from the Circuit Court for Cheatham County**
**No. 5694     Robert E. Burch, Judge**

---

**No. M2006-02427-COA-R3-CV - Filed March 24, 2008**

---

The trial court held that lessor was entitled to full rent for summer months although the air conditioning was inoperable.  The trial court reasoned that since lessor terminated the month to month tenancy months earlier due to the fact that lessor did not intend to repair the HVAC system, then lessor should not be penalized and rent is owed for those months.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Daryl Sanders, Nashville, Tennessee, Pro Se.

No brief filed by appellee.

### MEMORANDUM OPINION[1]

In July of 2005, Tom Salter sued Daryl Sanders in General Sessions Court to recover for non-payment of rent totaling $4,375.  The General Sessions Court awarded Mr. Salter $4,610.61 and dismissed Mr. Sanders' countercomplaint.  Mr. Sanders appealed to the Circuit Court.

A hearing was held by the trial court on February 6, 2006.  No stenographic report or verbatim recording of the hearing was made.  Accordingly, we must rely on a Statement of the Evidence prepared by the trial court and filed pursuant to Tenn. R. App. P. 24(c) for our recitation of the facts.

---

[1]This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Beginning in 1994, Mr. Sanders rented a house from Mr. Salter in Ashland City. The parties initially signed a one-year lease, and Mr. Sanders paid a $752 security and cleaning deposit. When the one-year lease expired, Mr. Sanders held over, initially paying rent of $725 per month which was later raised to $750 per month. This arrangement apparently suited both parties for several years.

In 2004, Mr. Sanders informed Mr. Salter that there were problems with the house, namely that the heating and cooling system ("HVAC") was not working properly. Mr. Salter inspected the HVAC and determined that the air conditioning was not working at all and while the heat functioned adequately, it had diminished capacity.

Mr. Salter testified that on December 31, 2004, he told Mr. Sanders that he was not going to fix the HVAC so Mr. Sanders must leave the house. Mr. Salter said he told Mr. Sanders that he could remain in the house through January of 2005 rent free.

Although Mr. Salter testified he had asked Mr. Sanders to vacate the premises, Mr. Sanders continued to live in the house past January of 2005 and paid no further rent. In May of 2005, Mr. Salter again told Mr. Sanders to leave. When Mr. Sanders refused to leave, Mr. Salter then filed this action to recover rent for 2005 and remove Mr. Sanders from the premises.

Mr. Sanders testified that the HVAC system completely failed to work after December 29, 2004, and that Mr. Salter did not tell him to vacate the premises. According to Mr. Sanders, from January thru August of 2005 when he left, Mr. Salter told him he was not obligated to pay rent. According to Mr. Sanders, Mr. Salter told him he could stay until he could find another suitable house to rent.

Mr. Sanders agreed that it took longer to find another house than either of the parties anticipated since Mr. Sanders had a collection of dogs and cats.[2] According to the Statement of Evidence, Mr. Sanders agreed at the hearing that he should pay rent after May 31, 2005.

The trial court made the following findings:

1. Notice was given to Defendant to quit the premises prior to January of 2005.

2. There was insufficient heat in the house during the winter of 2005.

3. There was no air conditioning in the house at all in 2005.

4. Rent was forgiven in January 2005.

5. No rent was owed in February and March 2005 because there was no heat and the house was not habitable.

_____

[2]Mr. Salter testified that the HVAC's problems apparently stemmed from damage to the duct work by Mr. Sanders' dogs.

6. Defendant owes rent for the months of April, May, June, July and August 2005 at the rate of seven hundred fifty ($750) dollars per month. The lack of air conditioning does not diminish the amount of rent to be paid since Defendant was occupying the house against the wishes of the landlord and the landlord was under no obligation to make the house habitable for a tenant that he didn't want there.

7. The seven hundred twenty-five ($725) dollar deposit shall be credited against the rent owed. Only normal wear and tear has been shown by the proof.

8. Judgment is awarded to the plaintiff against the defendant in the amount of three thousand twenty-five ($3025) dollars.

9. The counterclaim filed by Defendant is found to be without basis in law or in fact. The Court, therefore, finds for the Counter Defendant and dismisses the same.

10. Costs of the action are taxed to the defendant.

Mr. Sanders appeals the trial court's assessment of rent for April through August of 2005. Mr. Sanders does not challenge dismissal of his counterclaim for lost income and emotional distress seeking $10,000. The landlord, Mr. Salter, made no appearance on appeal.

## I. STANDARD OF REVIEW

We review this case *de novo* on the record with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). No presumption of correctness attaches to the trial court's decisions regarding questions of law. *Wilson v. Wilson*, 984 S.W.2d 898, 900 (Tenn. 1998), *cert. denied, Oakley v. Wilson*, 528 U.S. 822, (1999).

## II. ANALYSIS

Proceeding *pro se*, Mr. Sanders argues on appeal that he should not have been assessed the full rent for April through August of 2005 since the air conditioning did not work.[3] Mr. Sanders reasons that since the trial court released him from rental obligations for February and March of 2005 for lack of heat, the rent assessed for April through August of 2005 should likewise be eliminated or reduced for lack of air conditioning.

Before proceeding to discuss the merits of this case, it is important to note that there is no question that Mr. Sanders was on a month to month tenancy and that Mr. Salter appropriately terminated the tenancy. The question in this case concerns the terms upon which Mr. Salter terminated the lease, *i.e.*, how long Mr. Sanders could remain in the premises rent free. Likewise,

---

[3]Since Cheatham County has a population of less than 68,000 according to the 2000 federal census, this case is not subject to the Uniform Residential Landlord and Tenant Act. Tenn. Code Ann. § 66-28-102(a)(1).

it is crucial to note that the landlord in this matter is not even accused of withholding heat or air conditioning in order to evict Mr. Sanders. On the contrary, the trial court found that when the HVAC system broke down, the landlord terminated the month to month before January of 2005 tenancy because he did not want to repair the system and, if the tenant chose to remain on the premises during the summer, then the tenant owed rent.

The trial court addressed diminished rental in its sixth finding when it found the lack of air conditioning did not diminish the rental amount since Mr. Sanders was still on the premises despite Mr. Salter's wishes and, as such, Mr. Salter had no obligation to make the premises habitable. While Mr. Sanders argues this result contradicts the trial court's earlier holding that no rent was due in February and March due to lack of heat, we are not persuaded.

We note that there is no proof in the record that this house was not habitable from April through August of 2005 due to lack of air conditioning. Absent such proof, we find no authority to find, as a matter of law, that the lack of air conditioning renders a house uninhabitable. For example, we know of nothing that would prevent a landlord and tenant from agreeing to a lower rent due to the absence of air conditioning, but we are also unaware of any legal principle that would require them to do so. In any event, any argument that Mr. Sanders tries to make about the habitability of the premises from April through August is undercut by the fact he chose to remain although he was told in December that the air conditioning would not be fixed and that his lease term was terminated.

Even if one were to assume that the premises were not habitable due to lack of air conditioning, this "apparent" inconsistency in the trial court's ruling is corrected when one notes the trial court made no explicit ruling on the parties' disagreement about when the lease term ended. The court found Mr. Salter gave Mr. Sanders notice "to quit the premises prior to January of 2005" and that no rent was due in January. The parties agreed on these two points. The trial court's ruling suggests the court implicitly held that the parties agreed that Mr. Sanders could remain until he found another home, that a reasonable period of time for that to occur is the three month period of January through March of 2005, that Mr. Salter had an obligation to maintain the premises in a habitable condition for this period which he failed to do, leading to the conclusion that Mr. Sanders did not owe rent for those months. Since Mr. Salter gave Mr. Sanders notice to vacate the premises before January of 2005 and (under the interpretation of the trial court's ruling) a reasonable time to find another house, Mr. Salter thereafter had no obligation to maintain the premises in a habitable condition, and Mr. Sanders owed rent for April through August of 2005.

Finally, another way to view this case is that since the landlord gave notice for Mr. Sanders to vacate the property, which he did not, the landlord was entitled to full rent past January. Since Mr. Salter did not appeal the trial court's finding that Mr. Sanders owed no rent for February and March, then we cannot modify that portion of the judgment. The result might appear inconsistent to Mr. Sanders, but it is to his benefit.

Accordingly, the trial court is affirmed. Costs of this appeal are taxed to the appellant, Daryl Sanders.

_____
PATRICIA J. COTTRELL, JUDGE