# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 1, 2010 Session

# DORIAN JONES v. RONALD HICKS, INDIVIDUALLY AND DBA R AND R COLLISION

**Appeal from the Chancery Court for Sullivan County**
**No. C0017223     E.G. Moody, Chancellor**

---

**No. E2009-00844-COA-R3-CV  - FILED FEBRUARY 24, 2010**

---

Dorian Jones left his Jeep with Ron Hicks dba R and R Collision for restorative repairs in the summer or fall of 2005.  On or about November 3, 2008, Hicks sent Jones a letter stating that the Jeep would be "auctioned unless all repair and storage fees are paid in full within fifteen (15) days of receipt of this letter."  Jones called Hicks and, when he learned that Hicks had not performed any repairs, insisted on return of the Jeep without any payment.  Hicks refused.  Jones filed an action for replevin of the Jeep.  Hicks filed a counterclaim asserting that he was entitled to sell the vehicle for collection of his repair and storage fees.  After a bench trial, the court entered an order stating that Hicks was entitled to recover $564 without specifying what was to happen with the vehicle.  Jones filed a motion to alter or amend simultaneously with a notice of appeal.  The trial court entered an order amending its earlier order by addition of a paragraph which provided that the vehicle would be returned to Jones upon payment of the $564 plus accrued interest.  Jones contends in this appeal that Hicks was not entitled to any repair charges or storage fees under their informal unwritten arrangement since Hicks performed no repairs and gave him no notice that he would be charging storage fees.  We agree with Jones and reverse the judgment in favor of Hicks.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Chancery Court Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Dorian Jones, Johnson City, Tennessee, appellant, Pro Se.

No appearance by, or on behalf of, appellee, Ronald Hicks.

# OPINION

Hicks has been in the business of repairing frame and body damage to vehicles for over 20 years. Sometime in 2004 or 2005 he repaired a vehicle for Jones. Jones was very pleased with the repairs and the price. Jones later purchased a Jeep that needed some fairly extensive body repairs. He talked to Hicks about the repairs. It is undisputed that the end result of their conversations was that Jones left his Jeep at Hicks' place of business for repairs in either the summer or fall of 2005.

The biggest dispute at trial was the actual understanding of how the repairs were to progress. According to Jones, Hicks was to do some preparatory work on the frame of the vehicle and then get back in touch with him, Jones, about additional work and parts. According to Hicks, Jones was to furnish a "bucket" or body for the vehicle before any repairs would be undertaken. Hicks testified that it made no sense to start work on a vehicle without having the parts in hand.

Many facts are undisputed. It is undisputed that there was no written contract between the parties. It is undisputed that the parties communicated in December 2005 when Hicks made repairs to another Jeep that Jones owned. The bill for those repairs became an exhibit at trial. It is undisputed that the Jeep was not a high priority job to either of the parties. Jones was not in a hurry for the Jeep, and Hicks admitted the Jeep "just wasn't priority for me." Hicks admitted under cross-examination that he and Jones did not ever talk about storage fees, or labor rates, or, for that matter, any fees or charges. Before sending the November 2008 letter, Hicks never notified Jones that he would be charging storage fees. Hicks testified that when he filed his counterclaim, he did not really have any concrete basis for calculating storage fees. In the counterclaim, he based storage fees on $5 per day for three years, but at trial he testified that he should be entitled to 90 days of storage fees at the rate "everybody else charges" of $20 per day. In cross-examination, Hicks admitted again that he had never notified Jones that he would be charged $20 per day for leaving the Jeep with Hicks.

Hicks admitted that he did not make any repairs to the vehicle. Repairs, according to Hicks, were not to begin until Jones found the needed parts. In fact, Hicks testified that he was to give Jones a "price" for the repairs only after Jones supplied the parts. Hicks testified that he based his "repair" charges in his counterclaim on one hour inspecting the vehicle and two hours looking for parts, even though Jones was to supply the parts.

Hicks admitted that he did not intend to charge storage fees on the front end and that he never does that unless customers abandon their vehicles. On November 3, 2008, after he became "aggravated" about the Jeep being left on his property for three years, Hicks addressed a letter to Jones stating:

> This letter is being sent to . . . notify you that your 1983 Jeep . . .
> is being auctioned unless all repair and storage fees are paid in
> full within fifteen (15) days of receipt of this letter.

The letter did not include or enclose anything specifying the amount or basis for the charges.

Hicks alleged in his counterclaim that he had a right to sell the Jeep as an "abandoned vehicle under the provisions of Tenn. Code Ann. § 66-19-103 et seq.," but the trial court appears to have based its order in favor of Hicks on equitable principles. It stated, in pertinent part, as follows.

> Following a full hearing on the merits, . . . the Court finds as
> follows:
>
> 1. That no written contract existed between the parties, as their
> agreement was solely verbal.
>
> 2. That [Jones'] testimony and [Hicks'] testimony is
> diametrically opposed to the terms of the verbal agreement, as
> [Jones] testified that [Hicks] was to perform preparatory work
> on the vehicle in question prior to his supplying parts for a full
> restoration, and [Hicks] testified that the agreement was that he
> was to perform no preparatory work before he received any parts
> from [Jones].
>
> 3. That the vehicle has remained at [Hicks'] place of business
> since late 2005, and the last communications that the parties had
> with one another took place in December of 2005.
>
> 4. That there was no contact by either party and the vehicle
> remained on the lot for three years, the Court finds that it was
> the responsibility of both parties to contact the other and discuss
> how they would like to proceed. The Court finds that there is no
> reason why either party should not or could not have been able
> to do so.
>
> WHEREBY, IT IS HEREBY ORDERED, ADJUDGED AND
> DECREED as follows:

1.  That, due to the fact that it is difficult for the court to ascertain the full terms of the verbal agreement, inasmuch as the parties have testified differently in that respect, the Court, in balancing the equities of the testimonies and the circumstances at bar, find that [Hicks] is entitled to three (3) hours of work he performed on the vehicle at $38.00 per hour for a total of $114.00.

2.  That, in a further attempt to balance the equities, [Hicks] is entitled to ninety (90) days of storage at a rate of $5.00 per day, entitling him to be reimbursed for storage fees in the amount of $450.00.  Thus, it is ORDERED that [Jones ] is to pay [Hicks] a sum of $564.00, based upon [Hicks'] Counter-Claim which was answered by [Jones].

3.  Further, the costs of this action are hereby divided equally between the parties.

(Capitalization in original.)

As previously indicated, the trial court granted Jones' motion to alter or amend, and

ordered that the original Order entered in this cause be amended as follows:

"3.  It is hereby ordered that the vehicle which is the subject of this cause be returned to [Jones] upon payment by [Jones] to [Hicks] of the amount for labor and storage in the sum of Five Hundred Sixty-four Dollars ($564.00), plus all interest having accrued until paid."

The trial court allowed Jones to take possession of the Jeep, which he did, upon posting a bond in the amount of $600.  Pursuant to Tenn. R. App. P. 4(e) we will treat the notice of appeal filed simultaneously with the motion to alter or amend as prematurely filed and effective upon entry of the order on the motion to alter or amend.

Jones has stated as three separate issues for review what we think is better stated as one: Whether the trial court erred in finding that Hicks was entitled to recover repair fees and storage fees totaling $564 as a precondition to returning the Jeep to Jones.

-4-

We review a trial court's factual findings *de novo* to see if the evidence preponderates against those findings, beginning with a presumption that the findings are correct. Tenn. R. App. P. 13(d); **Brooks v. Brooks**, 992 S.W.2d 403, 404 (Tenn. 1999). There is no presumption that a trial court's conclusions of law are correct. **Wilson v. Wilson**, 984 S.W.2d 898, 900 (Tenn. 1998).

We begin with the trial court's finding that Hicks was entitled to charge for three hours "work he performed on the vehicle." Jones argues that the evidence preponderates in favor of a finding that Hicks did not perform any work on the vehicle. We agree. In fact, Hicks admitted that he did not perform work on the vehicle. Further, Hicks testified that he was not even to give Jones a "price" until Jones furnished certain parts. The absence of an intent or basis for repair charges is also shown by the fact that Hicks never invoiced Jones for the alleged work. Accordingly, we hold that the evidence preponderates against the trial court's finding that Hicks was entitled to charge for work done on the vehicle.

We think it is even clearer that Hicks had no legitimate basis for charging storage fees. He admitted that there was no discussion of storage fees with Jones. He admitted that he never charges his customers storage fees unless they abandon their vehicles, in which event he uses storage fees as a basis for disposing of the vehicles. Hicks admitted that he really had no basis in an agreement with Jones for figuring the daily rate in his counterclaim or at trial. Thus, in the counterclaim he used a rate of $5 per day for three years, and at trial he based his claim on 60 days at a rate "everybody else charges" of $20 per day. Under questioning by his counsel as to what he was seeking, Hicks stated that he just wanted the court to give him a fair amount. We hold that the evidence preponderates against the trial court's finding that Hicks was entitled to storage fees.

It is true that Tenn. Code Ann. § 66-19-103 (a)(1)(A)(Supp. 2009), relied upon by Hicks, gives garagekeepers[1] a lien, which can be liquidated by the sale of a vehicle, against "all vehicles which lawfully come into their possession" but only to the extent that there are "reasonable charges due." *Id.; see* **Roberson v. West Nashville Diesel, Inc.**, No. M2004-01825-COA-R3-CV, 2006 WL 287389 at *4 n.9 (Tenn. Ct. App. M.S., filed February 3, 2006). Since we have concluded that the evidence preponderates against the findings that there were charges due, it follows that Hicks had no lien against the vehicle that he could enforce by sale. Therefore, the trial court erred in conditioning the return of the vehicle to Jones on his payment of $564 plus accrued interest, which was covered in the trial court by Jones posting a $600 bond.

---

[1]A garagekeeper is defined as "any operator of a parking place or establishment, motor vehicle storage facility, or establishment for the servicing, repair or maintenance of vehicles." Tenn. Code Ann. § 66-19-103(b).

The judgment of the trial court is reversed, and judgment is granted in favor of Jones. The clerk and master will instanter return to the appellant, Dorian Jones, his bond in the amount of $600 and any additional security posted by Jones to secure his property or costs. Costs on appeal, as well as those at the trial court level, are taxed to the appellee, Ron Hicks dba R and R Collision. This case is remanded, pursuant to applicable law, for enforcement of the judgment in favor of Jones and for the collection of costs against Hicks at the trial court level.

_____
CHARLES D. SUSANO, JR., JUDGE