IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 25, 2011 Session

## STATE OF TENNESSEE v. GARY WAYNE MCCULLOUGH

**Appeal from the Criminal Court for Hamilton County**
**No. 270587     Jon Kerry Blackwood, Senior Judge**

**No. E2010-01126-CCA-R9-CD - Filed April 12, 2011**

Following a preliminary hearing in Hamilton County General Sessions Court, a Hamilton County grand jury charged the defendant, Gary Wayne McCullough, with operating a boat without lights, *see* T.C.A. § 69-9-209 (2004), boating under the influence, *see id.* § 69-9-217(a), violating the implied consent law, *see id.* § 69-9-217(f)(1), and simple possession of marijuana, *see id.* § 39-17-418 (2006). In the trial court, the defendant contended in a motion to dismiss the indictment that the actions of the Tennessee Wildlife Resources Agency (TWRA) in setting their own cases in a disproportionate number before certain general sessions judges constituted "judge-shopping" and resulted in a violation of the defendant's due process rights. Following an evidentiary hearing on the defendant's motion, the trial court agreed and remanded the case for a new preliminary hearing before a division of the general sessions court not implicated by the judge-shopping allegation. On interlocutory appeal, the defendant contends that the trial court should have dismissed his indictment with prejudice instead of remanding the case for a new preliminary hearing. The State contends that the trial court erred in dismissing the indictment and remanding the case. Because we conclude that the trial court's findings of fact are not supported by the record, we reverse the judgment of the trial court and direct the trial court to reinstate the indictment on remand.

**Tenn. R. App. P. 9; Judgment of the Criminal Court Reversed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Jerry H. Summers and Marya L. Schalk, Chattanooga, Tennessee, for the appellant, Gary Wayne McCullough.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William H. Cox III, District Attorney General; and Neil Pinkston, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In the evidentiary hearing, former Hamilton County General Sessions Judge O. Michael Carter testified that he presided over one of the five divisions of general sessions court from 1997 until 2005. He testified that he was unaware that any of the general sessions judges were assigned any case based upon a particularized expertise or interest that he or she possessed. He acknowledged, however, that in 1999 he spearheaded a year-long process to "develop a system that would allow neutral, independent setting of cases" in general sessions court. He recalled that certain attorneys would commonly "judge-shop" and have cases reassigned to a particular judge even after one judge "had handled a case for some time." Judge Carter also acknowledged that, prior to 1999, cases were assigned to particular divisions of general sessions court based upon subject matter but that the judges rotated throughout the divisions, resulting in no continuity in case management. He stated that the overall goal of the new system was to effect an equal share of the caseload among the judges.

Following the implementation of the new case assignment system, cases were assigned randomly by computer. Judge Carter explained that the assignment system was designed to set all cases randomly with the secondary goal of coordinating with the arresting officer's court appearance schedule. He admitted that the computerized system was modified several times due to the discovery that dates were changed manually in order to manipulate case assignments. When confronted by statistics showing that one division of general sessions court had handled 502 of the 578 TWRA cases, Judge Carter opined, "[T]hat can't happen under the system unless somebody is gaming the system." Statistics verifying the case assignments showed that one particular division received 502 of the 600 cases in 2003, 448 of the 460 cases in 2004, and 469 of the 500 cases in 2005. Judge Carter stated that it was "impossible" to receive such a disproportionate number without some manipulation of the system.

Gwen Tidwell, Hamilton County Criminal Court Clerk, verified that she compiled caseload statistics for the Administrative Office of the Courts. Statistics revealed that TWRA Officer Matt Majors issued 300 of the 457 TWRA citations in a two-year period. During that same period of time, Judges Robert Moon and David Bales received over 90 percent of Officer Majors' cases. Ms. Tidwell said that it surprised her that "these judges were getting a tremendous amount of TWRA cases." She recalled that the changes to the case assignment system were implemented to prevent lawyers, district attorneys, and officers from manipulating case assignments.

Ms. Tidwell explained that citation cases were set by the officers who had access to the court calendar and, therefore, knew when particular judges would be presiding. She explained that TWRA officers had only recently provided their work schedules so that

-2-

their schedules could be coordinated properly with the computerized system. Ms. Tidwell added that cases arising from arrests were set randomly by the computer. She observed that one of her clerks had changed dates on arrest cases at an officer's request. She denied, however, that any officer or judge intentionally requested certain assignments.

Specifically regarding the defendant's case assignment, Ms. Tidwell testified that the defendant's case arose from an arrest, not a citation. Accordingly, it was assigned randomly by the computer. She said that there was no indication that his case assignment had been changed or that it was "anything other than random." At this juncture of the hearing, counsel stipulated that there was no evidence that the defendant's case had been manually reassigned.

Mohammad Ahmadi, a University of Tennessee-Chattanooga statistics professor, testified that he analyzed the information gathered by Ms. Tidwell's office and concluded that Judge Moon presided over 49.3 percent of all TWRA cases that resulted in a conviction. Mr. Ahmadi opined that this percentage exceeded the average number of guilty convictions in other divisions by five times.

Bobbie Helton worked as a clerk in the general sessions court from 1983 until 1999 and again from 2004 until 2006. She stated that there was no policy to assign cases based upon "expertise." Shawn Johnson worked as a court administrator during the implementation of the revised case assignment program. He said that there was no policy to assign cases based upon expertise. He also acknowledged, however, that the courtroom calendars were not secret and that personnel had access to the calendars. Pamela Melton, the court administrator at the time of the hearing, testified that there was no policy to assign cases based upon expertise.

Larry Ables, Chief Magistrate of Hamilton County General Sessions Court, testified that the court clerk was able to override the random case assignment system. He denied, however, any knowledge that judge-shopping had occurred. Bart McKinney worked as the application development manager of the county's technology systems. He affirmed that a case assignment could be changed manually. He also noted that citation cases did not utilize the case assignment system and that any law enforcement agency could set its own dates on citation cases.

Newspaper reports and accompanying affidavits confirmed that Judge Moon made statements denying any manipulation of the case assignment system, but he did acknowledge that "TWRA officers prefer his or Judge David Bales' courtrooms because they are active hunters and fishermen who know the wildlife laws." Another article reported that TWRA officer Dan Hicks stated that wildlife laws are "'very different'" and that "it is

'common sense' that officers would try to find judges who know the laws the agency tries to enforce." The same article reported that Officer Hicks admitted that "officers send their cases regularly to General Sessions Judge Bob Moon, an avid hunter, since he is believed to be the most familiar with TWRA laws." A local journalist, John Wilson, testified that Sessions Magistrate Ables admitted that he occasionally overrode the computer system by asking the jail clerk to set a case on a particular docket. He also stated that Judge Moon routinely issued statements through Mr. Wilson's "blog" publication and that, in those instances, Judge Bales typically made comments in support of Judge Moon.

Counsel for the defendant in the present case filed an affidavit in which he stated that he had been

> informed directly and indirectly by two reputable citizens . . . that they were present at a banquet of the Cherokee Chapter of the Wild Turkey Federation of America on February 4, 2006, . . . wherein representations were made by Judge David Bales that if TWRA violations were brought to Division II-V [of general sessions court] the offenders would be punished to the full extent of the law, or words to that effect.

Michael Oppizzi testified that he is a member of the National Wild Turkey Federation, an organization that promotes hunting activities. He said that Judges Moon and Bales attended a fund-raising dinner for the Tennessee chapter of the Federation and recalled that both judges spoke at the dinner. He could not, however, recall the substance of their comments.

Robert Charles Coddington, Jr., testified that Officer Majors arrested him for various boating violations in May 2009. At the time of his arrest, Officer Majors advised Mr. Coddington that his case would be heard by Judge Moon. At the time of the evidentiary hearing in this case, Mr. Coddington's case was still pending after being reassigned to another division of general sessions court.

Harry Hixson testified that he operated a riding stable on land located near a TWRA tract. He said that TWRA Officer Greg Atchley warned him about bringing the horses onto TWRA land. During one conversation, Officer Atchley threatened Mr. Hixson that Judge Moon would send him to jail for 10 days if he did not heed Officer Atchley's warnings.

Officer Atchley admitted that he warned Mr. Hixson that he would be arrested if he persisted in riding his horses on TWRA land. He, however, denied telling him that

Judge Moon would put him in jail for 10 days.

The affidavit of Darren Rider, Chief of the Boating Division for TWRA, was admitted at the hearing. In it, Chief Rider affirmed that the TWRA had no formal policy that officers seek out particular judges when scheduling cases and that scheduling matters were "left to the discretion of individual officers, based upon the policies and customary procedures in the court system" where they served.

Hamilton County General Sessions Judge Robert L. Moon, Jr., affirmed that he had no control over case assignments. He said that citation cases were assigned by the court clerks and that arrest cases were assigned by computer. He denied that there was any policy for him to receive TWRA cases and stated that he was unaware that he and Judge Bales were receiving a majority of the TWRA cases. He denied that there was an appearance of impropriety shown by the statistics and said that there was instead "an appearance that I've been getting the lion's share of these cases." He also said that he preferred not to receive 95 percent of the TWRA cases. He admitted that he was shocked to learn that he was getting such a disproportionate number of cases, but he characterized TWRA cases as "such an insignificant number of cases that [are] heard in comparison to the totality of our dockets." Judge Moon said that the assignment of cases is a "clerical function" and that "[w]hatever the clerks . . . put in front of me, that's what I try." Regarding the defendant's case specifically, Judge Moon recalled that he conducted a preliminary hearing in the defendant's case and found probable cause to bind the case to the grand jury.

Hamilton County General Sessions Judge David Bales acknowledged that he and Judge Moon attended a Tennessee Wild Turkey Federation fund-raising dinner. He, however, denied making any promises during his public comments at the dinner to be "tough" on TWRA violators. Judge Bales professed no role in case assignments and explained that citation cases were assigned on the day that an officer is available and that everyone received an "equal and fair hearing" in the general sessions courts of Hamilton County.

Following the presentation of evidence and arguments of counsel, the trial court, noting that the State had conceded that cases had been assigned disproportionately, found that cases in the general sessions courts were not assigned randomly. The court found that TWRA officers set the dates on citation cases, that the same officers knew the court calendar, and that, thereby, the officers had the ability to manipulate which judge received their cases. The trial court found that the anomalies in case assignments "could not have been by accident or random act." The court ruled that the defendant had proven by a preponderance of the evidence that TWRA officers had selected Judges Moon and Bales and had intentionally directed citation case assignments to their courts.

-5-

The trial court noted that the evidence of judge-shopping "raised some serious questions about the confidence in the judicial integrity of our courts." The court did not, however, find that any general sessions judge committed any violation of the code of judicial conduct.

The trial court ruled that the established judge-shopping by TWRA officers infringed upon the defendant's due process rights to a fair trial. Because there was no finding of any violations of the code of judicial conduct, the court declined to dismiss the indictment outright and, instead, dismissed the indictment to remand the case to general sessions court for a preliminary hearing before a judge other than those implicated by the judge-shopping activity.

We begin our analysis mindful that both parties agree that the TWRA engaged in a repeated pattern of judge-shopping when setting citation cases for hearing in the Hamilton County General Sessions Court. The trial court ruled that this pattern of judge-shopping deprived the defendant of his due process rights under both the Fourteenth Amendment of the United States Constitution and article I, section 8 of the Tennessee Constitution. On appeal, the defendant contends that the trial court correctly ruled that the defendant's due process rights were violated by TWRA officers' judge-shopping but that the trial court erred by not dismissing the indictment with prejudice. The State claims that the trial court abused its discretion by dismissing the indictment and remanding the case to general sessions court because "the defendant has failed to prove not only that his case was improperly assigned but also that he was prejudiced by the assignment." Alternatively, the State contends that the indictment by the grand jury cured any defect that may have occurred in general sessions court.

"A fair trial in a fair tribunal is a basic requirement of due process." *In re: Murchison*, 349 U.S. 133, 136 (1955); *see also Turner v. Louisiana*, 379 U.S. 466, 472 (1965). "A citizen has the right to due process of law under the Fourteenth Amendment to the United States Constitution and under the 'law of the land' provision of article I, section 8 of the Tennessee Constitution." *State v. Culbreath*, 30 S.W.3d 309, 317 (Tenn. 2000). The due process clause of the United States Constitution provides "a minimal level of protection" while our courts are "free to expand th[is] minimum level of protection" in interpreting the Tennessee Constitution. *Id*.

"[D]ue process is flexible and calls for such procedural protection as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Therefore, the particular remedy for a due process violation should be narrowly tailored to each specific case. *See Wilson v. Wilson*, 984 S.W.2d 898, 902 (Tenn. 1998). Consistent with these principles, the "dismissal of an otherwise valid indictment returned by a grand jury is a little

used remedy." *Culbreath*, 30 S.W.3d at 317 (citing *United States v. Williams*, 504 U.S. 36, 54 (1992)). As a remedy, dismissal is generally used only upon a showing of prejudice by the aggrieved party. *See United States v. Morrison*, 449 U.S. 361, 365 (1981).

In *State v. Thomas*, 158 S.W.3d 361 (Tenn. 2005), the supreme court, by adopting the opinion of this court concerning a due process allegation of judge-shopping, observed that

> a defendant does not have the right to have his case heard by a particular judge, neither does he have the right to any particular procedure for the selection of a hearing judge, nor does he enjoy the right to have a judge selected by random draw.

*State v. Thomas*, 158 S.W.3d 361, 410 (Tenn. 2005) (citations omitted). In analyzing the propriety of the district attorney general's decision to qualify cases for the Major Violators Unit (MVU), thereby assigning them to one specific judge, the court noted that other jurisdictions differed concerning whether a requisite showing of prejudice need be made in order to prevail on a due process claim. *Id.* at 410-412. Ultimately, the court was "hesitant to conclude that [the actions of the district attorney] constitute[d] judge-shopping." *Id.* at 412. The court, however, also ruled that the defendants "failed to establish . . . prejudice" to prevail on their due process claim. In doing so, the court noted that "the judge assigned to MVU cases has been sworn to uphold the law and defend the Constitution." *Id.* Furthermore, "[w]e presume honesty and integrity in those acting as adjudicators." *Id.* (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

In the present case, we discern no need to reach the question of the propriety of the trial court's remedy in this case because the trial court failed to make any findings particular to arrest cases. Instead, the court found that judge-shopping had occurred in citation cases. The defendant in this case was prosecuted pursuant to an arrest warrant, not a citation. The parties stipulated that no evidence would show that the defendant's random computerized case assignment had been manipulated or changed. Regardless of any findings the trial court made relative to TWRA officers' choosing particular judges to hear citation cases, the record is clear that the defendant was prosecuted pursuant to an arrest and that his case assignment was not manipulated. Absent proof that his case was assigned to Judge Moon's court via judge-shopping by the TWRA, the defendant's due process allegation must fail.

Assuming for argument that the defendant's case assignment had been manipulated, we note that the trial court did not make any findings that the TWRA-preferred general sessions judges committed any violations of the code of judicial conduct or were

otherwise biased in their disposition of TWRA cases.  Absent any findings in this regard and mindful of the presumption of "honesty and integrity" of the judiciary, any conclusion that the defendant suffered prejudice as a result of the judge-shopping would be tenuous.

Because the record does not support the trial court's ruling that the defendant, who was prosecuted pursuant to an arrest warrant, suffered a violation of due process by the TWRA's practice of judge-shopping in citation cases, the order of the trial court is reversed. Upon remand, the trial court is directed to reinstate the indictment.

_____
JAMES CURWOOD WITT, JR., JUDGE