IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 9, 2015

## JAY EARL HAYNES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. 09-CR-288      Lee Moore, Judge**

---

**No. W2015-00919-CCA-R3-PC  -  Filed February 26, 2016**

---

The petitioner, Jay Earl Haynes, appeals the denial of his petition for post-conviction relief from his two rape convictions, arguing he received ineffective assistance of counsel. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Hal J. Boyd, Tiptonville, Tennessee, for the appellant, Jay Earl Haynes.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The petitioner was convicted of two counts of rape, as a result of his having intercourse with two mentally disabled individuals. He was sentenced to twenty years on each count, to be served consecutively, for an effective term of forty years. This court affirmed on direct appeal, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal.

The underlying facts of the case were recited by this court on direct appeal as follows:

In June 2009, the male victims, who are twins, were nineteen years old. The victims lived with their mother and required constant adult supervision because they had the mental development of a child. The evening of June 26, their grandmother and her boyfriend, [the petitioner], picked the victims up to spend the night. [The petitioner] had been dating their grandmother for about five months and living with her for about two weeks. The grandmother and [the petitioner] had taken the victims out dancing a few times before June 26.

The victims' grandmother was the supervisor of the kitchen at the Dyer County Jail. Very early in the morning of June 27, she received a call that she needed to be at work at 4:00 a.m. She tried to call the victims' mother but was unable to reach her. She left for work while [the petitioner] and the victims were sleeping.

In the morning, [the petitioner] asked one of the victims to come into the bedroom. [The petitioner] told the victim to pull his pants down. After using lotion to lubricate the victim's anus, he penetrated the victim and anally raped him. After [the petitioner] was finished, he wiped the victim with a towel. The victim said he saw blood on the towel. The victim's brother was not present during the rape. [The petitioner] next raped the other victim in the living room on the mattress on which the victims slept the night before. [The petitioner] also raped each victim a second time, one in the bedroom and one in the living room. [The petitioner] told the victims not to tell what had happened. Their grandmother came home and took them to their mother's house around 6:00 p.m.

When they arrived home, their mother stated that she could tell something was wrong because they were both withdrawn. They told her what had occurred while at their grandmother's house. As a result, their mother called their father and the police. The victims were taken to the hospital for an examination where nurses examined them and found that both victims showed signs of anal redness and slight injury to the anus.

The victims' father decided to confront [the petitioner]. The victims' father drove to his mother's house and sat in his car to watch the house. He saw [the petitioner] come out of the house to the "burn barrel" and put some trash in the barrel. [The petitioner] "lit the barrel." [The petitioner] began to bring what appeared to be sheets to the barrel as well. Before [the petitioner] could put the sheets in the barrel, the victims' father ran over and knocked the barrel over to put out the fire. The victims' father

2

took the sheets to the police.  [The petitioner] was apprehended a few days later.

State v. Jay Earl Haynes, No. W2012-01917-CCA-R3-CD, 2013 WL 3807992, at *1 (Tenn. Crim. App. July 17, 2013), perm. app. denied (Tenn. Nov. 13, 2013).

The petitioner filed a timely *pro se* petition for post-conviction relief and, after the appointment of counsel, an amended petition was filed.  In his petitions, he asserted, as in this appeal, that he received ineffective assistance of counsel because counsel failed to investigate and challenge the constitutionality of Tennessee Code Annotated section 39-13-503(a)(3) as applied in his case.  He asserted that his I.Q. score was within eight points of the victims' full scale I.Q. score, meaning that all of the parties were mildly mentally retarded and calling into question the "guilt or culpability" of the victims.  He further asserts that, because he was also mentally defective, the rape statute, Tennessee Code Annotated section 39-13-503(a)(3), essentially criminalized "consensual sex between mentally handicapped adult persons."  He contends that such criminalization was arguably unconstitutional according to Lawrence v. Texas, 539 U.S. 558 (2003), a case in which the United States Supreme Court upheld the right of same-sex individuals to participate in sexual activity.

The post-conviction court conducted an evidentiary hearing, at which the petitioner's trial counsel testified that he had practiced criminal law exclusively for twenty years.  He recalled that the petitioner was charged with two counts of rape, and that the allegation was that the two victims were mentally defective such that they could not consent to any type of sexual activity.  Counsel said that he was familiar with Lawrence v. Texas and agreed that the case dealt with sexual interactions between individuals when consent was not at issue.  However, he further agreed that the problem with the petitioner's case was that the issue of consent was at least implicated and noted that he argued such.  He elaborated that consent was not mentioned in the subsection of the rape statute under which the petitioner was charged, but counsel "couldn't figure out a way . . . that it wasn't an issue also."

Counsel testified that he addressed whether the rape statute was facially unconstitutional, not as applied to the petitioner.  He felt that he dealt with the statute's application to the petitioner "in terms of . . . the sufficiency of the evidence."  He "tried to lay out the idea that . . . [the defendant is] the same as [the victims]."  Counsel testified that he thought whether effective consent is given and whether consent may be given are closely related questions.

Counsel testified that he was very familiar with the facts and issues of the case and had looked at the statute to see the essential elements the State would need to prove.

3

Counsel recalled that a psychologist concluded that the petitioner had the executive function to make decisions that the victims lacked. He also recalled that his investigation revealed that the petitioner had held a job and had sexual relationships with other people. There was evidence at trial that the victims could not make adult decisions and had a low mental age. Counsel believed that the reason the petitioner was prosecuted and not also considered a victim was because of the differences in executive functioning and the fact that the petitioner had two prior felony sex convictions.

Counsel agreed that the primary issue in the post-conviction proceeding was whether he should have challenged the constitutionality of Tennessee Code Annotated section 39-13-503(a)(3) based on Lawrence v. Texas, the United States Supreme Court case that upheld the right of same-sex individuals to participate in private sexual activity. He acknowledged filing an appellate brief on the petitioner's behalf in which he essentially made the argument that Lawrence requires that a consent element be read into Tennessee Code Annotated section 39-13-503(a)(3). He elaborated that his argument was that:

> Despite the fact that the statute in question Tennessee Code Annotated 39-13-503(a)(3) mandates no element of consent . . . the real issue in this cause is whether the alleged victims had the mental capacity to consent to sex and if not whether the [petitioner] knew or had reason to know whether their mental abilities rendered them unable to consent to sex. Logically, this has to be the question because a literal reading of the statute charged alleges no crime but rather . . . simply prescribes individuals of lesser intelligence from engaging in sex. It is axiomatic that all people have a constitutional right to have sex and/or procreate if they so choose.

Counsel said that he made the same argument during oral argument. Counsel stated that he did not believe that Lawrence rendered Tennessee Code Annotated section 39-13-503(a)(3) unconstitutional because the statute protected people who "can't protect themselves."

Counsel acknowledged that the petitioner's argument in the post-conviction proceeding is that "because he is also . . . mildly mentally retarded; that he has some fundamental right to have sex basically with whoever he wants to." However, counsel agreed that Lawrence did not say there was a right to have sex anywhere, anytime, and with any person. For example, Lawrence did not apply to minors or those involved in situations where consent might not easily be refused. Counsel testified that his strategy was to prove that even if the victims were mentally disabled, the State failed to prove that the petitioner knew that they were due to his own mental disability. He summarized that

his two issues at trial were whether the victims were competent to consent and whether the petitioner "had the ability to tell that."

The post-conviction court made oral findings, followed by a written order, in denying the petition for relief. In its oral findings, the court determined that counsel "raised every defense that could be raised in this case and . . . did as good a job as could be done in defending" the petitioner. The court found that the issues of "statutory constitutionality" were raised and dealt with on direct appeal under a sufficiency of the evidence argument. The other issues raised by the petitioner were matters of trial strategy or were issues that were or should have been argued on direct appeal. The court concluded that the petitioner had failed to show ineffective assistance of counsel and that, even if he had, he failed to show prejudice.

In its written order, the court found that the issue of the constitutionality of Tennessee Code Annotated section 39-13-503(a)(3) had been previously determined as "trial counsel did arguably raise it on appeal in the context of a sufficiency of the evidence argument." The court continued that, even if not previously determined, the petitioner failed to prove that counsel's performance fell below the range of competence of attorneys in criminal cases or that there is a reasonable probability that the result of the trial would have been different but for the alleged deficiencies.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn.

5

Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The <u>Strickland</u> standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996) (citing <u>Strickland</u>, 466 U.S. at 688; <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, <u>see</u> <u>Strickland</u>, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. <u>See</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

Courts need not approach the <u>Strickland</u> test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u> <u>Goad</u>, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

On appeal, the petitioner argues that he received ineffective assistance of counsel because counsel failed to research, raise, and receive a ruling on constitutional issues surrounding Tennessee Code Annotated section 39-13-503(a)(3) and preserve the constitutional issues for direct appeal. He asserts that the statute is unconstitutionally vague and overbroad.

Tennessee Code Annotated section 39-13-503(a)(3) provides: "Rape is unlawful sexual penetration of a victim by the defendant . . . [when] [t]he defendant knows or has

reason to know that the victim is mentally defective, mentally incapacitated or physically helpless[.]" The petitioner asserts that the vagueness of the statute as applied to him is evidenced by counsel's inability "to untangle the differences between having mental defect (incapable of appraising the nature of the person's conduct) and the ability to give effective consent." He asserts that the statute is overbroad in that it could be "read and applied so as to prohibit two mentally defective individuals from engaging in private sexual conduct." However, the petitioner acknowledges that "constitutional matters are generally waived in [p]ost-[c]onviction proceedings" and also that the "constitutional inquires/arguments set forth . . . [in his brief] are matters which were admittedly overlooked . . . . It is in this spirit and in the duty to zealously represent the client the arguments are brought forth here for the court's consideration."

Upon review, we determine that the petitioner has waived his argument that the statute is vague and overbroad because he failed to raise it in his petition for post-conviction relief or amended petition. The petitioner briefly poked at the issue in the post-conviction evidentiary hearing, and the court sustained the State's objection based on the issue having not been raised in the post-conviction petition. The petitioner did not protest or attempt to argue that he had raised it. "As a general rule, this court will not address post-conviction issues that were not raised in the petition or addressed in the trial court." Brown v. State, 928 S.W.2d 453, 457 (Tenn. Crim. App. 1996). Moreover, this court will refrain from addressing constitutional issues unless required. State v. Thompson, 151 S.W.3d 434, 442 (Tenn. 2004); Wilson v. Wilson, 984 S.W.2d 898, 902 (Tenn. 1998).

We also determine that counsel was not ineffective for failing to research, raise, and receive a ruling on constitutional issues surrounding Tennessee Code Annotated section 39-13-503(a)(3) and preserve the constitutional issues for direct appeal. Tennessee Code Annotated section 39-13-503(a)(3) criminalizes the unlawful sexual penetration of those whom a defendant knows to be mentally defective, mentally incapacitated or physically helpless. If the petitioner's argument is that he was too mentally impaired to violate the statute, then that is an issue of the petitioner's capacity to be resolved on the facts with expert testimony. If the petitioner's argument is that he did not know the victims were mentally incapacitated, then that is a factual issue for the jury's determination and not a constitutional claim. In fact, counsel raised the issue on direct appeal that the petitioner lacked knowledge of the victims' mental impairment. Jay Earl Haynes, 2013 WL 3807992, at *2-4. Finally, counsel actually made a constitutional claim on direct appeal regarding Tennessee Code Annotated section 39-13-503(a)(3) by arguing that it violated a constitutionally protected action of intellectually disabled persons to engage in sexual activities under Lawrence v. Texas unless a consent requirement was read into the statute. Accordingly, we agree with the post-conviction

court that the petitioner failed to prove that counsel performed deficiently or that any deficiency caused him prejudice.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE